NEW-YORK,
May, 1838.

Townsend
v.
Goewey

the bond and mortgage, and that Pond had the right to have the mortgage forclosed and the premises sold to pay the debt. The cause was submitted on written arguments.

*J. Porter*, for the plaintiff.

*A. Gould*, for the defendants.

---

TOWNSEND and others *vs.* GOEWEY.

Where an incorporated joint stock association is formed, and the members of it by the articles of association, promise to pay the amount of stock by them severally subscribed, in calls to be made by trustees named in the articles, an action at law lies to enforce such promise, notwithstanding that both the plaintiffs and the defendants are members of the association and consequently co-partners.

An action at law cannot be maintained upon an implied promise from one partner to another in the same association; but it lies upon an express promise in respect to advances to be made, or a common stock to be created, for carrying on the business of the association.

If the promise be to trustees named in the articles of association, the action must be brought in the names of such trustees, although the term of their office has expired, or the trust has passed into the hands of other persons

either as successor, or as substituted by act of the legislature and the as-
sent of the stockholders.

So the action must be brought in the names of the first trustees, although for
calls made after their offices have expired.

THIS was an action of *assumpsit*, tried at the Albany cir-
cuit in October, 1837, before the Hon. JOHN WILLARD, one
of the circuit judges.

On the 24th May, 1836, an association was formed in
the city of Albany, for the purpose of building an *Ex-
change*, and articles of association were entered into, whereby
the subscribers agreed to form themselves into a joint stock
company, to be known as " The Albany Exchange Com
pany," for the purpose of purchasing a block in the city,
and erecting thereon a building for the use of banking and
insurance companies, &c. which should not only be orna-
mental, but yield a fair return to the stockholders on their
investment.   The capital stock it was agreed should con-
sist of 3000 shares of $100 each, and that the subscribers
should take the number of shares set opposite their respective
names, and pay the amount *required to be paid* thereon *to
the trustees in the articles named*, or to their *successors*.
The trustees named were I. Townsend, E. Corning, J. L.
Rathbone, S. Stevens, J. Stevenson, G. W. Stanton and
S. M. Woodruff, who were declared *to be the first trustees*
and to hold their offices *until the second Monday of January*,
1837.   The trustees were empowered to make calls from
time to time on the capital stock.   The stock to be deemed
personal property, to be transferrable as such, scrip to be
issued, and *assignees* to be subject to the regulations of the
association the same as the original subscribers.   The articles
not to be binding unless 2500 shares of the stock were
subscribed for within ten days from the date of the articles.
If a charter should be granted by the legislature to the
company or trustees, and the same should be adopted at a
meeting of the stockholders, it was declared that the same
should be binding upon the subscribers to the articles of asso-
ciation, and that the *trust* thereby created should cease and
*vest* in the company.

NEW-YORK,
May, 1838.

Townsend
v.
Goowey.

The 2500 shares of stock were subscribed for within the stipulated time, and the trustees made large purchases of land in the contemplated block, and entered into contracts and personal liabilities to a large amount to carry into effect the objects of the association. On the 21st February, 1837, a charter was obtained from the legislature, and the company incorporated. *Seven* persons were named in the act of incorporation as the first *directors*, who were to hold their offices until the second Monday of January, 1838, *only four of whom* were of the number of trustees named in the articles of association. The charter took effect immediately, and was adopted at a meeting of the stockholders. *Previous* to its adoption *two calls* of five dollars each on each share of the stock had been made by the trustees, and *after* its adoption *four* more calls of a like amount were made. The defendant was one of the original subscribers to the articles of association, and subscribed for *two* shares of the stock. The defendant having neglected to pay the calls upon his shares, this action was brought against him to recover *sixty dollars*, the amount of *six calls*. The suit was commenced in July term, 1837, after the act of incorporation and the adoption of the charter, *in the names of the seven persons named in the articles as trustees* as plaintiffs. Upon the above state of facts the plaintiffs rested their cause. The defendant's counsel thereupon moved for a nonsuit on the following grounds : 1. that the *plaintiffs* and the *defendant* being stockholders in a joint stock association were *partners*, and an action at law could not be maintained without showing a balance struck, or a settlement and an express promise to pay. 2. That the plaintiffs *ceased* to be trustees on the second Monday of January, 1837, according to the articles of association, and after that day were not entitled to maintain an action, or if entitled, they could sue only for the *calls* made previous to the expiration of their offices. 3. That the granting of the charter by the legislature, and the adoption of the same by the company *put an end to the trust* held by the plaintiffs, and the same vested in the incorporated company : and for that reason

no action could be maintained by the plaintiffs except for the calls made previous to the granting and adoption of the charter ; and 4. That the defendant had a right to forfeit his stock, and the plaintiffs having failed to show a promise to pay, they were not entitled to recover. The judge refused to nonsuit the plaintiffs, and the jury under his direction found a verdict in their favor for the amount of the *six calls* with interest. The defendant asks for a new trial.

NEW-YORK, May, 1838.

Townsend
v.
Goewey.

*J. Holmes*, for the defendant.

*S. Stevens & M. T. Reynolds*, for the plaintiff.

*By the Court*, COWEN, J. The objection taken for the first time on the argument, that this association was illegal as being in the nature of a corporation issuing scrips and providing for a transfer of its stock, is not well founded. The act of associating in this way is, we think, properly characterized, by the first exception taken on the trial. It constituted a partnership, valid as being formed for the purposes of a lawful and honest enterprize. Colly. on Part. 624, Am. ed. and the cases there cited.

It is, we think, clear that if this action will lie at all, it must be in the names of the plaintiffs, the original trustees to whom the promise was made. Such promise is not negotiable, and although the beneficial interest may have passed to the successors of the plaintiffs, and thence to the corporation created by the charter, no agreement contained in the articles could work a transfer of the legal right of action to others, to be pursued in their own names. They took but an equitable right as assignees, and have very properly proceeded and brought their suit in the name of the original promisees, their assignors. The promise being to pay to the trustees or their *successors*, is but an agreement that the *successors* should be considered and have all the rights of assignees, without a formal assignment. The same may be said as to the *directors* of the incorporated company. It may be that the calls should have been made by the successors or assignees respectively holding the beneficial in-

NEW-YORK, terest at the time; yet, in legal effect, they would be the
May, 1838. calls of the original promisees, and should be so treated in
Townsend pleading.   No question is made in the case, however, but
v.       that the calls were made by the right persons.
Goewey.
The more nice question in the cause is the one first stated
in the bill of exceptions, viz. that the plaintiffs themselves
being stockholders, are co-partners with the defendant, and
therefore can not maintain assumpsit.   That the plaintiffs
or either of them were stockholders does not appear in
the bill of exceptions, though it was assumed and agreed on
the argument, that some or one of them are, and a desire
mutually expressed that the question should be considered
by us in reference to numerous other causes pending upon
the articles wherein the fact would appear.   We have
accordingly looked into the question.   No objection was made
that if the articles were of a nature to raise a partnership,
but that such a connection has been formed.   The parties
have subscribed; all conditions in the way of the articles
becoming absolutely obligatory, are removed; and the dec-
laration avers that the trustees, the agents of all, have pro-
ceeded to action in the business of the company.   Colly. on
Part. 626, 7.   It was denied, on the argument, however,
that a joint stock company constitutes a partnership, and
it was said this was so held by the late Chancellor Kent,
in *Livingston* v. *Lynch*, 4 Johns. Ch. R. 573, 592, of The
North River Steam Boat Company.   The contrary is
extremely well settled by a long and well considered train of
authority, both English and American, unbroken, as far as
I have been able to find by a single judicial opinion beside
that of Chancellor Kent.   Colly. on Part. 626, 651, and the
cases there cited.   3 Kent's Comm. 26, 3d ed. and the
cases there cited.   Considering the question *a priori*, we
do not see how there can be any serious doubt.   The
stockholders became jointly interested in the subject of their
dealings; and their first article declares the object to be *a
fair return for their investments.*   The amount to each
must of course depend on a general account of mutual profit
and loss.   Colly. on Part. 8, 14.

It is true, that the law will not *imply* a promise from one
partner to another in respect to their common concerns.
Colly. on Part. 143.   But I am not aware of any thing
in this relation which precludes them from making a
valid express contract *inter se*, and in respect to any branch
of their partnership business if they choose.   Several exam-
ples of this are given in the books.   It was held that though
a partner in a joint stock company go on and perform services
and expend money as an agent in its formation, he shall
not have an action at law to recover it, even though the
company in contemplation were never actually formed.
Both plaintiff and defendant were shareholders having
subscribed the articles.   The defendant was chairman.   Yet,
Abbot, C. J. said, " if he [the defendant] had given any
*personal undertaking* to pay the expenses incurred by the
plaintiff, that might entail a liability upon him."   *Holmes* v.
*Higgins*, 2 Dowl. & Ryl. 196 ; 1 Barn. & Cress. 74, S. C.
Accordingly in *Venning* v. *Leckie*, 13 East, 7, the defendant
having agreed with the plaintiff his partner to take one-half
share of certain flax bought by the plaintiff on joint account,
and to furnish the plaintiff with one-half the amount, in
time for the payment thereof, in case he should require it,
the K. B. held that the plaintiff might recover at law on this
promise.   Lord Ellenborough, C. J. said, " There are many
deeds of copartnership in which the partners covenant each
to advance a certain sum at first, and can it be said that
no action would lie by one to enforce that covenant against
another, because there are accounts between them afterwards,
which require unravelling in a court of equity ?"   Le
Blanc, J. said, " The respective sums were to be paid by
each before there could be any account of profit or loss
between them as partners upon the goods."   In *Neale* v.
*Turton*, 4 Bing. 149, Best, C. J. admitted that if one partner
were to draw on other partners by name, and they were
individually to accept, he might recover against them,
because by such an acceptance, a separate right is ac-
knowledged to exist.   And *Preston* v. *Strutton*, 1 Anstr.
50, seems to have been decided on this principle.   A
specific promise or arrangement between partners, though

NEW-YORK, in respect to a part of the common fund, therefore, takes it
May, 1838. out of the general account in equity and makes it the subject
Townsend   of an action at law.  *Coffey* v. *Brian*, 10 Moore, 341; 3
    v.     Bing. 54, S. C.  And it was not denied in *Davies* v.
Goewey.    *Hawkins*, 3 Maule & Sel. 488, but on the contrary seems to
have been conceded, that it is competent for the parties to
declare in advance by their articles of copartnership, the
persons in whose name actions may be brought in behalf of
the firm against a member of the firm, for goods sold to him
by the partnership.

In the case at bar we have an express promise to pay a
specific amount to the plaintiffs, which was to constitute so
much of the original stock upon which the business of the
company was to proceed.  The money subscribed never
made a part of the general account of the partners; but even
if it had, I find no case which holds that it might not have
been taken out and made the subject of an action at law by
an express agreement.  The short of the agreement here is,
that in consideration of the plaintiffs incurring certain duties
as trustees, the defendant would pay them the sum subscribed
by him, to enable them to carry on the common concern.
*Jale* v. *Lockie*, 2 Stark. Rep. 107, will also be found a case
in point.  One partner agreed to furnish manuscript for a
work to be printed by the other; but stopped after the print
of 336 pages.  Assumpsit was held to lie for the breach;
and Lord Ellenborough, C. J. held that the defendant had no
right arbitrarily to break off from the contract.  He said
" the action is not brought to recover partnership profits, but
for not contributing his labor towards the attainment of profits
to be subsequently divided."  The motion for a new trial
must be denied.

New trial denied.