## Glover *vs.* Tuck and others.

One *partner* may maintain *an action of covenant* against this *co-partner*, whether the covenant be to pay any sum or do any act for the purpose of only *launching the partnership*, or whether it be to perform any of the articles after the partnership has commenced. An action of covenant will lie although there may be accounts between the parties which require unravelling in equity. And where the partnership covenants have not been infringed for any length of time, the action of covenant is the proper remedy : a court of equity not interfering to restrain the breach of covenant, unless the bill pray and there are just grounds for a *dissolution*.

Where a specific act is to be done by the plaintiff, or any number of acts to be done by him by way of *condition precedent*, he must shew in pleading precisely what he has done by way of performing them, with *such circumstances* as are material in point of law to raise the corresponding obligation.

Where there are *several breaches* assigned in one count, some *good* and some *bad*, and there is a demurrer to the whole count, the plaintiff will have judgment. The proper course for the defendant in such case is to demur to the defective portions of the count.

Demurrer to declaration in covenant. The plaintiff recited in the first count, that he severally, and the defendants in common, were before, and at the time of the agreement executed, seized of land bearing pine timber in the state of Michigan, viz. the plaintiff of 1120 acres, the defendants viz. Tuck of 500 acres; Ewer, 1500 acres; R. Runker, 406 acres $\frac{44}{100}$ of an acre, and C. Runker 800 acres ; and that on the 27th of February, 1837, by sealed agreement between the plaintiff and defendants, the parties agreed, each with all the rest, separately and collectively, that they would pay their

[ *154 ] proportions of the expense of erecting a *steam saw mill on said

land, near Lake Huron, of a prescribed power, with fixtures, &c. with the design of cutting timber from said lands. That the defendants agreed to *honor* the plaintiff's drafts on them, to be made from time to time as his contracts, and the execution of the proposed plan might require, to an amount not exceeding $8000 ; and authorized him, with the funds thus to be provided, to procure a steam engine for the mill, &c., and that they also covenanted to defray his necessary expenses and advance his proportion of the common outlay, he paying interest, and agreeing to refund the same as provided in the agreement. That he on his part covenanted with the defendants, that he would immediately proceed in his duties under the agreement, and devote his whole time and attention to the prosecution of said plan or operation, without compensation, until the mill should be erected and put in successful operation ; and that he should thereafter, during one year, continue his services as agent or superintendent, for a reasonable compensation, &c. and would not otherwise engage during the year, &c. He then averred that, to carry out the above purposes, he relinquished the nautical profession ; and although he *had performed and fulfilled and had always from the time of executing the agreement been ready and willing and had offered to perform and fulfil the covenants and agreements in all things on his part to be fulfilled, had lost his time, and expended $2000 in this behalf;* yet the defendants did not, nor would, *although often requested so to do,* in any manner perform the said agreement and did not nor would pay any proportion of the expense needful and incidental to the erecting of the mill ; and did not nor would pay any sum for the fixtures, and did not nor would honor the plaintiff's drafts on them, although the contracts of the plaintiff and execution of the said proposed plan required the same to be honored ; and although he made and caused such drafts to be duly *presented,* viz. one draft for $1000, dated March 1st, 1837, another of $1750, &c. and did not nor would defray the said plaintiff's necessary expences ; and did not nor would advance the plaintiff's proportional part of the common outlay, nor any portion thereof; and *that the agreement had not been in any manner [ *155 ] performed by them, nor the plan in any manner commenced or carried into effect.

The second count stated that, by a sealed agreement of the same date, it was agreed between the plaintiff and defendants to cut the timber upon certain lands in the state of Michigan, part of which were owned by the plaintiff, and other parts thereof by the defendants. And it was also covenanted by the defendants, that the plaintiff should become the agent and superintendent in the erection of a steam saw mill, with the requisite machinery on said land near Lake Huron, for the purpose of sawing the timber, and that the defendants would furnish him with the necessary funds to an amount not exceeding $8000 for the erecting and furnishing thereof, and for carrying

on the said operation, the plaintiff agreeing to pay interest on a certain proportion of the sum to be advanced, and to refund the same. Farther, the defendants agreed that they would defray the necessary expenses of the plaintiff in the discharge of his duties under said agreement. That it was farther provided that, after the mill should be erected and put in successful operation, the plaintiff should, for one year thereafter, continue his services as agent, &c. for a reasonable compensation, &c. The plaintiff then averred that, immediately on the execution, &c. he relinquished all and every occupation, &c. for the purpose of performing the said covenants, &c. on his part, &c. and hath always, from the time of the making of the said covenants, &c. to the time of the commencement of this suit, *been ready and willing, and had offered to perform and fulfil the said covenants, &c. on his part, &c.* Yet the defendants did not nor would, *although often requested,* &c. furnish the said plaintiff with the requisite funds for the erection and furnishing of the said mill in pursuance of said covenants and agreements, nor in any manner carry the said agreement into effect, and by reason of such delay and refusal the plaintiff was put to great inconvenience, &c. and hath paid and disbursed in necessary expenses $2000, &c.

[ *156 ] The defendants craved oyer of the agreement, which was *granted. It recited the interests of the parties nearly as set out in the first count, and that they had agreed to put the said interest into *a common stock,* with a view to cutting the timber from the land. They then agreed each with all the rest separately and collectively, as recited in the said first count ; that the agreement should continue and be binding on them, their heirs and assigns, until all the timber should be cut, &c. That, in making sale of any portion of the interest of any of the parties, provision should be made by the party disposing, &c. for the responsibility of the purchaser, and his acquiescence in the intended operation, each not to dispose of more than one-third of his interest, without consent of the others *now* interested. That a statement of the operations of the *partnership* should be made every six months, accounts rendered, and *proceeds, if any, divided,* according to the respective proportions of the *co-partners.* The defendants put in a demurrer to each count, setting forth a great number of special causes of demurrer.

*S. Stevens,* for the defendants. I. The agreement or instrument declared upon, is an agreement creating or constituting a *partnership* composed of the plaintiff and defendants, and an action at law does not lie upon it.

II. An action at law cannot be sustained upon or for the breach of any covenant in such an agreement, unless it be a covenant to be performed before the business of the partnership is to commence ; or the covenant be to perform a specific thing *after* the partnership commences. The agreements

here are in relation to the general concerns of a partnership.  12 *Johns. R.* 401.

III. The covenants alleged to have been broken were not covenants to be performed before the business of the partnership commenced.

IV. A general averment of performance on the part of the plaintiff is not sufficient.  He should aver specifically the fact and manner of the performance of the particular acts and things on his part which entitle him to call on the defendants for performance, or which would show the defendants were required to perform on their part.  4 *Wendell,* 551, *and cases there cited.*

V. Both counts are defective in not averring a *special re-* [ *157 ] *quest* to perform.

VI. The second count is defective for want of certainty in the several particulars specified in the special causes of demurrer.

*J. Greenwood,* for the plaintiff.  I. The agreement declared upon does not create a partnership.

II. If it does, the action can nevertheless be maintained.

III. The averments and assignments of breaches in the declaration are sufficient : 1. A general averment of performance is sufficient ; the acts to be performed involving no question of law, but being mere matter of fact.  But there are also other sufficient averments of a more particular character.  2. The particular nature and details of the plaintiff's expenses, what his contracts were, and how far the plan had been executed, are all matters of evidence.  3. No special request of payment was necessary.  The covenant imposes the duty to pay.  Notice is all which, in any view of the case, could be necessary.  4. The drawing and presenting of the drafts constitute notice ; and these are the mode of payment provided in the agreement.  5. Even a general averment of non-performance is good unless demurred to, and this assignment in the first count is not demurred to.

IV. The want of a special request, stating time and place can be taken advantage of only on special demurrer.  This objection is not stated in the demurrer to either count except as to the plaintiff's expenses, and as to these there is no assignment of breaches in the second count.  Notice is included in the request laid.  The averment as to performance, and assignment of breach in not furnishing the requisite funds, in the second count, are sufficient.

V. If any of the breaches in either count are well assigned, plaintiff is entitled to judgment as to that count the demurrer being to the whole count.

*By the Court,* COWEN, J.  There is not the least question that this    [ *158 ] action is well founded in principle.  The objection that the articles

of agreement between the plaintiff and defendants constituted a partnership, in consequence of which the plaintiff's remedy lies in a court of equity only, is thus answered by *Collyer on Partnership*, 132, *Am. ed.* 1839 : " One partner may maintain an action of covenant against his co-partner, whether the covenant be to pay any sum, or do any act for the purpose of only launching the partnership, or whether it be to perform any of the articles after the partnership has commenced. An action of covenant will lie, although there may be accounts between the parties which require unravelling in equity. And where the partnership covenants have not been infringed for any length of time, the action of covenant is the proper remedy ; a court of equity not interfering to restrain the breach of covenant, unless the bill pray, and there are just grounds for a dissolution." I have examined the leading cases cited by him, and find that his doctrine is clearly sustained by the English authorities ; and there is no case in this state, I apprehend, which trenches upon it in the least. *Niven* v. *Spickerman*, 12 *Johns. R.* 401, is relied on ; but that appears to be an action of covenant for a general balance of account, after the partnership had been in operation some two years. I do not perceive that there was a covenant to pay any balance ; but the action seems to have been brought on a notion that it would lie, merely because the articles which formed the partnership were under seal. Where, as in the case before us, the covenant is to make specific advances for the purpose of launching the partnership, I presume the right to an action was never questioned. *See Townsend* v. *Goewey*, 19 *Wendell*, 424. Several American cases cited in the same edition of Collyer, appear to concede the rule as laid down by him in its full latitude. Mr. Chitty, 2 *Chit. Pl.* 524, *ed. of* 1828, gives a precedent in covenant on articles, which supposses the partnership to have been some time carried on ; though he suggests that on a covenant to account, the plaintiff must encounter the inconvenience of being confined to nominal damages. *Therefore, if there has been no balance struck, he must resort to equity for his share of the profits. The following cases, not cited in *Collyer* at the page mentioned, will also be found to bear in favor of the plaintiff : *Owston* v. *Ogle*, 13 *East*, 537 ; *Musier* v. *Trumpbour*, 5 *Wendell*, 274. Several cases cited by me in *Townsend* v. *Goewry*, 19 *Wendell*, 429. *Bradenhurst* v. *Bates*, 11 *Moore*, 421 ; 3 *Bing.* 463, *S. C.*

[ *159 ]

The substance of the agreement by the defendants here was, that they would enter into partnership with the plaintiff, retaining him as agent and superintendent in the adventure, and furnishing him with such funds as might be necessary for launching and prosecuting the business. The extent of the advances were, for the purposes of his declaration at least, limited to the acceptances of drafts or bills on them, to be made from time to time, as the

plaintiff's contracts and the execution of the proposed plan might require, to an amount not exceeding $8000, to the defraying of his necessary expenses, and the advance of his proportion of the common outlay, on certain terms. The plaintiff covenanted immediately to proceed in his duties, and devote himself exclusively to the performance of them. He avers that, in pursuance of the agreement, he abandoned his other business ; and although he had performed and fulfilled, and had always, from the time of the execution of the agreement, been ready and willing, and had offered to perform and fulfil the covenants and agreements on his side, and had in this expended $2000, the defendants would not, although often requested, &c. in any manner perform—would not pay any proportion of the needful expense in erecting the mill nor for the fixtures, nor honor the drafts, though the plaintiff's contracts and the execution of the plan required them to be honored, and though he caused certain described drafts to be presented. Nor would they defray the plaintiff's necessary expenses, nor advance his share of the out-lay. The mill or any part of it was never erected, nor did any one, so far as we learn from the declaration, ever take any definite step in the progress of the concern.

It is quite obvious that the liability of the defendant to any extent, depended on conditions prescribed in the agreement, *to be perform- [ *160 ] ed by the plaintiff. He is, therefore, bound to show, in proper form, the actual fulfilment of those conditions ; or some excuse why they have not been fulfilled.

As to the acceptance of bills, the amount was to depend on the plaintiff's contracts and the exigencies of the work in its progress. Now the plaintiff does not show that he ever entered upon the plan, so far as to make contracts, or that he did any other act by which liabilities were incurred. I think it was necessary for him to set forth the facts specifically, upon which he bases his claim to acceptances, such as that he had contracted for an engine, or fixtures, or had demanded an acceptance for the purpose of purchasing them, which had been refused. This being so, it was necessary, not merely that drafts should be presented under the notion of general necessity ; but the defendants should have been advised of the particular purpose. It was, therefore, necessary to aver farther, that special notice was given of the purpose. We want to know the exigencies of the business, and what these were.

Again : the complaint is, that they would not employ the plaintiff, or receive him into their service, though he had performed, and was always ready to perform. But what specific act of performance is averred ? None. What was the offer ? Did he tender himself, declare his readiness, and meet with a refusal ? He does not say that he ever even requested the defendants to employ him pursuant to their covenant. But he avers that he offered to perform his covenants and agreements. Assume that this offer

was made to the defendants, and is a sufficient allegation of notice ; did they refuse to employ him, or obstruct his going on with the adventure ? It is not said they refused to permit him to proceed. But it is said generally the defendants would not perform ; adding that they refused to do certain specific things which clearly we cannot hold they were bound to do, till we see the plaintiff had done more than to make his general offer.

It is quite well established, that where a specific act is to be done by the plaintiff, or any number of acts by way of 'condition precedent, he must shew in pleading precisely what he has done by way of performing them. 1 *Chit. Pl.* 278, ed. of 1828. *Id.* 282. If a deed is to be given, or money to be paid, or services to be peformed, he must either aver in so many words, that the deed has been given, the payment made, or work done ; or that each by name was tendered and refused, with such circumstances as are material in point of law to raise the corresponding obligation. *Id.* 282, 3, 4. And so of like instances. *Mansel on Demurrer*, 51, 2. This enables the court to see whether the defendants be in fault ; and presents matter on which he can take a definite issue. *Thomas* v. *Van Ness*, 4 *Wendell*, 449, 552, 3. The allegation of performing every thing, or offering to perform every thing, involves in itself many possible acts of performance, and invites an issue on all of them. It cannot be seen on what the parties go down to trial. Indeed the plaintiff here offers an issue on a double set of possible facts. He says he *had* performed all, and *offered* and *was ready* to perform all. And this he contends raised a precedent obligation on the part of the defendants, so as to supersede the necessity of special notice, and make the bringing of a suit sufficient notice. The generality here would be a substantial defect even were it negative, and by way of breach, which need never be so special as the averment of a performance intended to satisfy a condition precedent. *Barton* v. *Webb*, 8 *T. R.* 459. *Hughes* v. *Smith*, 5 *Johns. R.* 168. *McGeehan* v. *Bridget*, 1 *Hall*, 33. *Post Master General* v. *Cochran*, 2 *Johns.* 413. *Vid. also Mansel on Demurrer*, 48, 49, 26, 65, 66. I refer to this author, *p. 55 to 58*, for illustrations of the rule that you must show the condition well and exactly performed.

There is certainly a case mentioned in *Mansel*, 57, going to show that the plaintiff has very nearly made one sufficient averment. I mean as to his loss of time, being put to inconvenience and incurring expenses. It is the case of *Jermy* v. *Jenny*, *T. Raym.* 8. Yet in both counts, these are made so much a dependence or consequence of the general performance, or general offer to perform, that they cannot be served, and thus answer the rule that any part *of the count being good, the demurrer being to the whole, must fail. The substance is, that the plaintiff had necessarily spent $2000, in his acts of general performance and loss of

time, &c. or by reason of not accepting his general offer. Had the averment been distinct, that the expenses were incurred by doing any act or acts, sufficiently shown to be within the condition, it would, according to *Jermy* v. *Jenny*, have been enough, even without a special notice. It would, under the direct covenant to pay necessary expenses, perhaps have raised a duty ; and by the case cited, it need not have been shown more particularly how the expenses arose, or to whom or on what particular occasions it was paid. *Vide Barton* v. *Webb*, 8 *T. R.* 459.

I admit the question I am now examining, is one of *quo modo* merely ; nor do I deny the rule insisted on, that where a condition precedent lies by the covenant itself in a definite and certain form, so definite that it need not be made more certain for the purposes of pleading, there it is enough to say generally that the party has performed it according to the intent and meaning of the agreement, if the condition as contained in that, were fully stated ; and so of any number of acts by way of precedent condition. *Wright* v. *Tuttle*, 4 *Day*, 313. But this is very rarely so. Clearly it is not the case at bar ; and one of the very authorities cited by the defendant's counsel, goes directly to prove, that when a condition relates to some general business, comprehending divers acts, the *quo modo* must be shown in a plea of performances. *Post Master General* v. *Cochran*, 2 *Johns. R.* 413.

Both the counts stand on substantially the same footing, as to substance and form. The second professes to be a summary statement of the agreement according to its legal effect. But the *oyer* must be taken as making a part of each count. That being imported into the second, it presents defects of almost literally the same character with those in the first. If there be any difference, it is in the greater meagreness of the second. The averment is simply of a general readiness to perform. Actual performance is not mentioned. But the objection is not to the substance hinted
"at, for either readiness or performance is enough ; the objec-     [ *163 ]
tion is, that neither is stated, so that an issue could be framed. We are not told what the plaintiff did by way of performing or attempting to perform. Did he tender himself at a proper time and place ? was he rejected ? Did he go on to Michigan ? Look over the ground ? ascertain the wants of the adventure, and give notice of these when the drafts were sent ? Was he in all this out of pocket, and did he call for reimbursement, giving special notice of the amount, and that it arose in the line of the business ? Was the business so far matured as to call for an advance of his share of the outlay, or indeed for any advance ? and as the agent of the concern, was this fact communicated to the defendants ? at what stage of the matter, in short, and under what circumstances were the defaults complained of on the part of the defendants committed ? The plaintiff was the active man. He was to move, advise, make calls, execute. The objection

is, that neither all these things nor any of them are so communicated by a mere hint, thus : " Although the plaintiff had·performed, or was ready, and the defendants, although often requested, &c. did not and would not do this and that:"

To the objection of the want of notice. Perhaps it is truly answered, that supposing actual performance of any condition precedent to be sufficiently averred, no notice of it need be alleged ; that the party undertakes and is bound to notice it at his peril, and the *licet sœpius requisitus* will do. *Mansel on Demurrer*, 30, 48. 1 *Chit. Pl.* 286, 287, *ed. before cited.* But performance in any way is averred by the first count only ; and there the averment is defective as being general. Perhaps it may also be correct to say that the offer to perform, averred both in the first and second counts, would be sufficient as implying special notice. I do not see that this averment is demurred to for its generality. *Vide* 1 *Chit. Pl.* 283, *4th ed. before cited.*

Nor do I think any serious objection can be made, especially to the first count, for generality in the assignment of breaches. So far as mere general non-performance is concerned, the objection is valid. But that [ *164 ] is helped by the *setting forth of several specific breaches with sufficient exactness. The demurrer goes to the whole count, and is answered by the correct assignment of any single breach, even though there may be several others altogether defective. *Mansel on Demurrer*, 49. 1 *Chit. Pl.* 576, 7, *ed. before cited.* The doctrine is quite familiar as between different counts. *Chitty* says it is the same as between different divisible allegations in the same count ; and if you mean to attack any one of them where the count contains others that are sufficient, you must put your finger on the defective portion. A count may be thus dissevered, and judgment be rendered on one part for the plaintiff and as to another for the defendant, just like a declaration made up of several counts. *Benbridge* v. *Day*, 1 *Salk.* 218. It is quite doubtful, however, whether any one breach is well assigned in the second count.

On the whole, because the plaintiff has not shown any such specific steps on his part as to put the defendants in default, judgment must go for them, with leave to amend.

Judgment for defendants.