## CONTOOCOOK VALLEY RAILROAD *v.* BARKER.

Where the number of shares into which the capital stock of a corporation is divided is fixed by the charter, and that provides that the directors may make equal assessments upon all the shares, no valid assessment can be made against a subscriber for shares until all the shares are taken, unless he in some way waives the provisions of the charter.

The defendant subscribed for one share in the plaintiff corporation, and agreed to pay the same in such assessments as the directors for the time being might order. The act of incorporation fixed the number of shares at ten thousand, and before that number was subscribed for the directors made sundry assessments to nearly the amount of the share.—*Held,* that the shares not being all subscribed for, the assessments could not be recovered.

ASSUMPSIT. The declaration set forth that the defendant, on the second day of November, 1848, in consideration that the plaintiffs had permitted said Barker to become a member of said corporation, and assigned and transferred to him one share, of

the value of one hundred dollars, of the capital stock thereof, promised the plaintiffs to pay into the treasury thereof such assessments on the shares, not exceeding in all one hundred dollars on each share, as should be ordered by the directors from time to time; and on the 13th of November, 1848, the directors of said railroad ordered an assessment of ten per cent. on all shares, to be paid on or before January 1, 1849, being $10 on said Barker's share, of which Barker had due notice; yet, though the time for the payment has long since elapsed, and though often requested, the said Barker has not paid, but refuses, &c.

Also, that on said 2d of November, 1848, in consideration that the corporation, at the special instance and request of Barker, permitted him to become a subscriber for one share of stock in said railroad, and then and there assigned him said share, and Barker then and there accepted the share, and thereby became liable, and then and there promised to pay to the railroad such assessments on said share as the directors of said railroad might from time to time order, not exceeding in all $100 on each share, and on the 13th of November, 1848, the directors ordered an assessment of ten per cent. on all shares, to be paid on or before January 1, 1849, being $10 on Barker's share, of which Barker had due notice, and then and there became liable to pay the same, according to said order; and in consideration thereof then and there promised to pay the same, according to the order; yet, though the time limited for the payment has long since elapsed, and though often requested, said Barker has not paid, &c.

There were two similar counts on each of five other assessments, viz.: Ten per cent. ordered February 28, 1849—payable March 20, 1849; ten per cent. ordered April 3, 1849—payable April 20, 1849; twenty per cent. ordered May 2, 1849—payable May 20, 1849; twenty per cent. ordered June 2, 1849—payable June 20, 1849; thirty per cent. ordered June 26, 1849—payable July 10, 1849, and a count for $110, money paid, &c., and interest.

The defendant pleaded the general issue. The plaintiffs put

in evidence the charter of the corporation, and they produced the records of the corporation to prove the organization.

On this book was recorded a vote of the directors, passed November 13, 1848, laying an assessment of ten per cent. on each share, payable January 1, 1849.

To this evidence the defendant objected, that the capital stock is made by the charter to consist of ten thousand shares. Here it does not appear that any part of the capital stock was then subscribed ; that the charter requires that all the stock be subscribed before any assessment can be laid ; and that the assessments must be equal on all the required stock of the corporation.

It was further objected, that there is a variance between the evidence and the declaration, inasmuch as the assessment is laid upon the stockholders and not on the stock ; and it is not, though so stated in the declaration, made payable to the treasurer, nor to any one, nor any where.

Like votes were shown for the other assessments alleged in the declaration, to which the like objections were made.

It appeared by the record that at the meetings of the directors holden on the 4th and 10th of November, 1848, the clerk was absent, and a clerk *pro tem.* was chosen. On the 10th of November, 1848, the clerk resigned, and a new clerk was elected and sworn. On the 13th of November the clerk *pro tem.* was sworn, that the records signed by him were true, and he was not otherwise sworn.

To the third and sixth assessments it was objected that the records are made by a clerk *pro tem.*, who was sworn afterwards, that his records were true, but not otherwise.

The plaintiffs then produced a subscription book for stock, entitled, " Contoocook Valley Railroad : Subscription for Stock." " We, the subscribers, hereby agree to take the shares set against our names, being at $100, and to pay the amount in such assessments as the directors for the time being may order : said subscription to be expended between Contoocookville and Henniker West Village."

This was signed, Joseph Barnard, Jr., ten shares ; Hamilton E. Perkins, twenty shares ; John Barker, one share.

The names of Barnard and Perkins were erased. The defendant objected that these erasures avoided the instrument, and the court held the book inadmissible unless the erasures were explained by the plaintiffs.

John H. George was offered as a witness by the plaintiffs. He testified, in answer to inquiries by defendant, that he had no interest in this corporation, having sold out his stock that day to enable him to testify in this case. He stated that he had been treasurer of the corporation. The whole amount of capital stock fixed by the charter has not been paid in. The whole amount so paid is not far from $100,000, and the corporation is in debt about $50,000.

The defendant objected that he was not a competent witness, because, by the statute of July, 1846, he remained liable for all the debts of the company, notwithstanding the sale of his stock; but the court overruled the objection.

Said George then testified that as treasurer he gave notice of each assessment to each stockholder, and to the defendant, by a circular addressed to him by mail, and inserted a notice of each assessment in the N. H. Patriot and in the Congregational Journal. He testified that all the assessments were made for the general purposes of the corporation.

Joseph Barnard, Jr., was admitted to testify, subject to the same exception. He stated that one of the signatures erased on the subscription list was his, that it was for ten shares, and that he erased it himself. He had before subscribed for the shares on another book, and had taken ten shares and no more. He made the erasure on his own responsibility, and without permission of the officers of the corporation. He designed to take ten shares and no more, and never said he intended to take more.

H. E. Perkins testified, subject to the same exception as the last witness, and gave a like account of his subscription. He testified that his name was erased by Barnard. He took and paid for the shares he designed to subscribe for.

The defendant objected, that there is a material variance between the declaration and the evidence introduced. The sub-

scription contains no promise to pay into the treasury of the company, nor any where, nor to any body. The subscription purports that the money should be expended between Contoocookville and Henniker West Village, of which nothing is said in the declaration. No evidence is offered that the corporation have ever permitted the defendant to become a stockholder, or have ever assigned to him a share of the capital stock of the railroad.

It was objected, that there was no evidence of any money being paid or expended on the railroad between Contoocookville and Henniker West Village.

A witness was recalled, who testified that the work on the road was begun in November, 1848, three miles above Contoocookville; the track was laid September 25, 1849, and the road was opened to Hillsborough Bridge, December 17, and the money expended upon the road was paid by the plaintiffs. But it also appeared that it was paid upon a contract to build the whole road from Contoocookville to Hillsborough Bridge, 5½ miles above Henniker West Village, and was paid generally for the work done under that contract.

A verdict was taken for the plaintiffs, subject to be set aside and judgment to be rendered for the defendant, if the defendant's exceptions are sustained.

And thereupon it was ordered, that the questions arising in this case be reserved and assigned for the decision of the Superior Court.

*Morrison & Fitch*, (with whom was *Smith*,) for the defendant.

The defendant contends that there is a material variance between the record produced in evidence and the one declared on.

The declaration alleges a promise to pay into the treasury, and also sets forth that the assessments were laid on the stock. The record produced is of an assessment upon the stockholders, but not payable to any one any where.

A variance between the record declared on and the one produced, is fatal. *Gibbs* v. *Shaw*, and *Taylor* v. *Kennedy*,

Contoocook Valley Railroad *v.* Barker.

Breese 88. When the record is the foundation of the action, it must be strictly proved. 2 Greenleaf on Evidence 94.

In this case the consideration is material, and the defendant was bound to prove it as laid. The consideration, as set forth, was that the plaintiffs had assigned and transferred to the defendant one share of the capital stock of said corporation, and was properly set forth, and, being so set forth should have been proved. A contract must be proved as laid in the declaration. *Crawford* v. *Morrill*, 8 Johns. 253 ; 10 Johns. 140 ; 2 Greenleaf on Evidence 90 ; 1 Chitty on Pleading 332 ; 1 Saunders on Pleading and Evidence 114, 146.

The agreement set forth in the declaration was unconditional, while that proved is conditional. This, we contend, is a fatal variance. The defendant contends that the condition upon which he signed, viz., that the money should be expended between Contoocookville and Henniker West Village, is material to enable the court to form a just idea of what the contract actually was, and should have been stated in the declaration with certainty and precision, and proved as stated. 1 Saunders on Pleading and Evidence 119, 120 and 148 ; 1 Chitty on Pleading 331. A conditional contract must not be set forth as an absolute one, unless the condition be merely a defeasance of the contract. *Stanwood* v. *Scovill*, 4 Pick. 422.

" Where the contract is conditional, it will be a fatal misdescription to state it as an absolute one." 1 Chitty on Pl. 337.

" In a notice, as well as a plea, the contract must be correctly stated, and proved as laid." 10 Johns. 140.

" If any part of the contract vary materially from that which is stated in the pleading, it will be fatal, for a contract is an entire thing and indivisible." 1 Greenleaf on Evidence 88.

" The plaintiff being bound to state his contract correctly, it follows that a misstatement of the quality or nature of the defendant's promise, and his consequent liability thereon, will be a fatal error." 1 Chitty on Pleading 337.

*Peaslee & George,* and *Pierce & Minot,* for the plaintiffs.

EASTMAN, J.   There is one question in this case which is decisive of the plaintiffs' right of recovery, and the court have therefore found it unnecessary to examine the other questions.

This action was brought to recover for assessments alleged to have been made upon one share in the plaintiff corporation, for which, it is contended, the defendant was liable according to the terms of his subscription.

The subscription paper which the defendant signed for one share was as follows:

" We, the subscribers, hereby agree to take the shares set against our names, being at one hundred dollars, and to pay the amount in such assessments as the directors for the time being may order.   Said subscription to be expended between Contoocookville and Henniker West Village."

Upon this agreement, the defendant having promised to pay such assessment as the directors should make upon his share, he would be liable therefor in an action of assumpsit, before resort should be had to a sale of the shares under the charter.   *Salem Mill Dam Corp.* v. *Ropes*, 6 Pick. 23 ; *Central Turnpike Corp.* v. *Valentine*, 10 Pick. 142 ; *Smith* v. *Natchez Steamboat Co.*, 1 Howard 479 ; *South Bay Meadow Dam Co.* v. *Gray*, 30 Maine 547 ; *Dutchess Cotton Manuf. Co.* v. *Davis*, 14 Johns. 238 ; *Townsend* v. *Goewey*, 19 Wend. 424 ; *Glover* v. *Tuck*, 24 Wendell 153.

But before he can be made liable it must appear that he has been duly and legally assessed.   Where the number of shares into which the capital stock of a corporation is divided is fixed by the charter, and that provides that the directors may make equal assessments upon all the shares, no valid assessment can be made against a subscriber for shares until all the shares are taken, unless he in some way waive the provisions of the charter.

In the case of the *Central Turnpike Corporation* v. *Valentine*, 10 Pick. 142, the act provided that the stock of the corporation should be divided into four hundred shares, of seventy-five dollars each ; and that no person should be held to pay a greater sum than seventy-five dollars on any share by him sub-

scribed for. And the subscription papers contained a promise of the subscribers to pay the sums which should be assessed on their shares. In an action brought by the corporation against a subscriber for stock, to recover an assessment laid for the general purposes of the corporation, it was held that the plaintiffs must prove that the whole number of shares were taken up before the assessment was laid.

This decision was founded upon that of *Salem Mill Dam Corporation* v. *Ropes*, 6 Pick. 23, where the broad principle was laid down that no legal assessment could be made for the general objects of the act of incorporation until all the shares should be subscribed for. In a subsequent case between the same parties, the same principle was reäffirmed. 9 Pick. 187. And in a still more recent decision in the same jurisdiction, the like doctrine was held. *Cabot and West Springfield Bridge* v. *Chapin & als.*, 6 Cushing 50. The English authorities are to the same effect. *Fox* v. *Clifton*, 6 Bingham 776 ; *Wontner* v. *Shairp*, 4 Manning, Granger & Scott 404 ; *Pitchford* v. *Davis*, 5 Meeson & Welsby 2 ; *Norwich & Lowstoft Company* v. *Theobold*, 1 Moody & Malkin 151.

The case in our Reports of the *Littleton Manuf. Company* v. *Parker*, 14 N. H. 543, is doubtless familiar to all who have had occasion to turn their attention to this subject. There the act of incorporation provided that the members might divide the capital stock into as many shares as they might think proper. By a written agreement the subscribers fixed the capital stock at fifty thousand dollars, divided into five hundred shares of one hundred dollars each, but only one hundred and thirty-eight shares were subscribed for ; and it was held that no assessment for the general purposes of the corporation could legally be made until all the shares were taken.

And in *N. H. Central Railroad* v. *Johnson*, 10 Fost. 390, the same doctrine was held. The principle is this, that when a person subscribes for shares in a corporation, he does it upon the faith of the charter and provisions therein contained. He is entitled to his shares only according to the terms of the charter, and he can

likewise be called upon for assessments only according to those terms. A promise in a subscription to stock to pay the assessments upon the shares, goes no further than to make the subscribers personally liable to pay such assessments as shall be *legally* made. The effect of this form of subscription is to create a personal liability in the first instance upon those who subscribe, beyond the statute liability of a sale of the shares to meet the assessments.

The promise to pay assessments cannot mean *illegal* assessments, but only such as shall be duly and legally made, according to the provisions of the charter.

In *Cabot and West Springfield Bridge* v. *Chapin & als.*, before cited, the court say : " When the purpose of the subscribers to stock is that of proceeding to the execution of the business of the company, upon a partial filling up of the capital, and it is deemed expedient to levy assessments before the entire stock is taken up, there should be inserted a provision to that effect in the articles of subscription. In the absence of such a provision, it is necessary, before an individual subscriber can be charged upon his subscription, that the whole capital stock, or number of shares which constitute it, should have been taken up, or the party must have waived his rights to insist upon that condition by his own acts."

In the case before us, the charter fixed the number of shares at ten thousand, and the defendant took the exception that it was not shown that that number, or, indeed, any number, was subscribed for when the assessments against him were made. This exception was well taken, for, on examining the case, we do not find any evidence or intimation that the whole stock, or any thing approximating to it, was subscribed for when the assessments, with which it is attempted to charge the defendant, were laid. There is no intimation, either, that the assessments were made for any but the general purposes of the corporation. Nor is there any thing having a tendency to show that the defendant had waived any of his rights, as fixed by the charter, and the subscription.

By the charter, the directors were authorized to make such equal assessments, from time to time, as might be necessary, on *all* the shares in the corporation. Laws 1848, chap. 660, § 5. They could not assess upon part of the shares, nor in unequal sums; and these assessments having been made on only a portion of the shares of the corporation, were not in accordance with the charter and can not bind the defendant. They were not legally made.

The decision of this point goes to the foundation of the action and shows that the suit can not be maintained; and according to the provisions of the case the verdict must be set aside and

*Judgment entered for the defendant.*