Barnes *v.* Perine.

---

WARREN SPECIAL TERM, May, 1850. *Paige*, Justice.

BARNES and others, Trustees of the First Presbyterian Church of Glen's Falls, *vs.* PERINE.

Moneys subscribed for the rebuilding of a church edifice are subscribed for the benefit of the religious corporation, and belong to it. The corporation is the equitable if not the legal owner of such moneys; and being the real party in interest, a suit for the recovery thereof should be brought in its corporate name.

A mistake in the names of the plaintiffs is not a ground of nonsuit. The only remedy of the defendant is by a plea in abatement.

Such a mistake can be corrected, on the trial, or afterwards, by amendment.

The defendant subscribed $150 towards a fund for the rebuilding of a church edifice. He afterwards attended several meetings of the congregation (he being a member thereof) and of the subscribers to the fund, at which it was resolved to erect a new house of public worship, and at which a building committee were elected, and that committee were directed, with the advice and consent of the trustees, to erect a new church edifice, and to make the necessary contracts for that purpose. The defendant also took a part in the proceedings of these meetings. The building committee erected a new church edifice, and expended more than $6000 thereon, upon the faith of

Barnes *v*. Perine.

the subscriptions, without any knowledge or notice on their part, or on the part of the trustees, that the defendant refused to pay his subscription. *Held*, that this was a case of services rendered and expenses incurred by the trustees at the request and by the direction of the defendant, for which an action would lie, upon the subscription paper.

*Held also*, that the subscription paper, and the subsequent request and direction of the defendant to the corporation, considered together, established a conditional promise to pay $150 provided the trustees of the church would erect a new church edifice; and that the condition having been performed by the corporation, before the retraction of the promise, the defendant was liable to pay the sum subscribed by him.

*Held further*, that the agreement of the defendant might also be regarded as an offer or proposition, and the building of the church as an acceptance thereof.

It is not necessary that a consideration should exist at the time a promise is made. Thus if one party promise another to pay him a sum of money if he will do a particular act, and the latter does the act before the revocation of the promise, the promise thereupon becomes binding, although the promisee does not, at the time, engage to do the act.

In such a case the doing the act is a good consideration for the *previous prom-ise*; and the promise amounts to a request to do the act.

THIS action was brought against the defendant on a subscription paper signed by the defendant and others, which was in the following words: "We the subscribers agree to pay the sums set opposite our respective names, for the purpose of building a Presbyterian Church at Glen's Falls. Said church to be built on the lot now occupied by the old Presbyterian Church in said village; the amount to be subscribed in cash to be five thousand dollars, the money to be paid to the trustees of said church or to a building committee to be appointed by the undersigned subscribers; the body of the church to be finished and furnished uniformly; the pews or slips are to be equitably assessed and rented annually, and said assessments and rents to be paid and applied by said trustees in payment for the stated preaching of the gospel in said church and congregation and expenses of said church. Dated at Glen's Falls, March 29th, 1848."

The defendant subscribed $150. The plaintiffs were incorporated under the general incorporating act of 1801, by the name of the Union Church of Pearl Village, &c. The corporate name was changed by an act of the legislature in 1848, and the corpo-

ration was authorized by that act to dispose of their old church edifice and to appropriate the proceeds in the erection of a new meeting house on the same lot, which was owned by the corporation. On the 30th of March, 1848, the trustees appointed a committee to procure subscriptions for the erection of a new church edifice. On the 18th of April, 1848, the members of the religious society met to consider the propriety and practicability of building a new house of public worship, and to hear the report of the subscription committee. That committee reported that the subscriptions then amounted to $4670. At this meeting it was resolved, inasmuch as the old church edifice was old and unfit for use, and too small for the accommodation of the members of the society, that it was their duty to erect a new house of public worship, and a committee was appointed to circulate subscriptions to procure funds for that purpose. On the 22d of April, 1848, the subscribers to the fund for building a church had a meeting and elected a building committee under the subscription signed by the defendant and others. On the 24th of April, 1848, the subscribers had another meeting, and resolved that the trustees of the church be requested to sell the old church edifice, and that it be the duty of the building committee to make contracts, &c. for the building the new edifice, and to take the general supervision of the same and cause the subscriptions to be collected, &c. and do all the business relating to the new edifice with the counsel and advice of the trustees. The subscribers, at this meeting, also resolved that the building committee be authorized and required to build a plain, substantial house of worship with the advice and consent of the trustees; and that the subscription be left in the hands of the trustees, to be circulated for additional subscriptions, and to be collected and paid to the treasurer of the corporation, in installments, &c. The trustees, at a meeting on the 27th of April, 1848, appointed a committee to sell the old church edifice, and at a meeting on the 28th of April, 1848, the trustees made a call on the subscribers, and adopted the resolution of the subscribers authorizing and requiring the building committee to build a plain house of worship, and appointed as a building committee the same persons elected

as such committee by the subscribers. At a meeting of the society on the 30th of May, 1848, the building committee reported three plans of a church edifice ; one of which was approved. On the 3d of February, 1849, at a meeting of the trustees, the building committee reported to the trustees that they had expended $2735, and had incurred liabilities to the amount of $1369,40, in the erection of the new church edifice. The calls on the subscribers by the trustees were required to be paid to the treasurer of the corporation. The defendant attended the meeting of the subscribers on the 22d of April, 1848, when the building committee was elected, and took part in the proceedings of the meeting. He was also present at the meeting of the subscribers on the 24th of April, 1848, and took a part in the proceedings of that meeting ; also at a meeting of the society on the 18th of April, 1848. The subscription had been in circulation previous to this meeting. The defendant was also present at the meeting of the society on the 30th of May, when the plan of the church was adopted. The old church was torn down in July, 1848, and the new edifice was erected on its site. The defendant signed the subscription paper previous to the 22d of April, and about a week after it had been in circulation. The building committee made contracts for labor and materials. They made a contract for the stone work before the old edifice was removed, and also a contract for the brick in May. $6000 or more was expended in the erection of the church. The money expended was paid by the treasurer of the corporation, on the drafts of the building committee. The subscriptions amounted to more than $5000. The defendant had been a member of the society for several years previous to the building of the new church, and was such at the time of the erection of the church, and is still a member of the society ; and is a pew-holder in the new edifice. The new edifice will cost $7000 or $8000 when completed. The annual election of trustees was on the 24th of May. One of the trustees swore that before the old church was pulled down, but more than 4 weeks after the election of trustees in May, 1848, he ascertained from the defendant that he declined to pay his subscription ; but there was no evidence that his declination to pay was

Barnes v. Perine.

ever communicated to the board of trustees, or to the building committee. A verdict for $162,50 was directed to be rendered for the plaintiffs, and the case was reserved for further consideration.

*H. R. Wing* and *E. H. Rosekrans*, for the plaintiffs.

*W. A. Beach*, for the defendant.

PAIGE, J. The counsel for the defendant, in his motion for a nonsuit, made the following points, viz.: 1. The action, if sustainable, should have been brought, either in the corporate name of the church, or in the names of the persons who were trustees at the date of the subscription; or in the names of the building committee. 2. The undertaking of the defendant was void for want of a consideration. 3. Being void when made, it could not become a valid contract by means of the subsequent acts of the building committee, in erecting the church, or in making contracts for that purpose.

If a mistake has been made in the names of the plaintiffs, it is not a ground of nonsuit. Such mistake could, on the trial, and can now, be corrected by an amendment. (*Code*, § 173.) The moneys subscribed, were subscribed for the benefit of the religious corporation, and belonged to such corporation. The corporation was the equitable if not the legal owner of the same. Being the real party in interest, the suit should have been brought in its corporate name. (*Code*, §§ 111, 173. *Fisher* v. *Ellis*, 3 *Pick.* 325. 1 *John.* 139. 2 *Denio*, 417. 19 *Wend.* 424.) If the mistake is merely a mistake in the name of the corporation, the only remedy of the defendant was by a plea in abatement. (2 *R. S.* 454, § 14.)

The principal question in the cause is whether the promise of the defendant was void for want of a consideration. The defendant relies on the case of *Hamilton College* v. *Stewart*, (1 *Comst.* 581,) as sustaining his proposition that the promise is void. In that case the defendant and others, as subscribers, bound themselves to pay to the trustees of Hamilton College the sums set

opposite to their respective names, &c. upon the condition that the moneys collected should be permanently invested as a productive fund and the interest applied to the payment of the salaries of the officers of the college; and that the subscribers should not be holden to pay the sums subscribed by them unless the aggregate of their subscriptions and of contributions to that object should, by the 1st of July, 1834, amount to $50,000; nor unless Mr. Hunt, &c. certified that in his judgment responsible subscriptions &c. to the amount of $50,000 had been made. The plaintiffs in that case proved that they had incurred expense in employing agents to procure subscriptions to the fund; that the trustees of the college had invested the moneys raised to the amount of $37,750, and that the interest had been applied in payment of the salaries of officers of the college, and that professors had been employed on the strength of the fund subscribed. Judge Gardiner, who delivered the opinion of the court of appeals, held that there was no engagement on the part of the trustees of the college, or of any other person, to do or forbear to do any thing. as a consideration for the promise of the defendant, and that therefore the undertaking of the defendant was void for want of a consideration. He regarded the clauses in the instrument in relation to the investment of the fund, &c. and the non-liability to pay unless the subscriptions &c. amounted, by the 1st July, 1834, to $50,000, &c. as mere conditions limiting the liability of the defendant, or designating the purpose to which his money when paid should be applied. He says— "The corporation do not undertake that that sum ($50,000) shall be subscribed, or that any other person will endeavor to procure subscriptions, or that they will make the investment or appropriate the income of the fund to the purpose designated. The corporation have not executed the agreement, and there is no evidence that they knew of its existence until after the subscription of the defendant." Judge Gardiner further says, "There is no request by the subscribers that the plaintiffs shall do anything." "The trustees are made the mere depositaries of the money, and nothing more." But Judge Gardiner concedes that if the agreement had furnished evidence of a request to the plaintiffs, by the

defendant, to perform certain services, in consideration of which he promised to pay them the sum subscribed by him, that the right of the plaintiffs to the subscription money would have been unquestionable. And he expressly affirms the correctness of the decisions in the cases of *McAuley* v. *Billinger,* (20 *John.* 89 ;) *The First Religious Society in Whitestown* v. *Stone,* (7 *Id.* 112 ;) and *Amherst Academy* v. *Cowles,* (6 *Pick.* 427.) Speaking of the case of *McAuley* v. *Billenger,* he says the court held " that the consideration for the defendant's promise was the repairing of the church. That the defendant, by signing the paper, sanctioned the acts of the meeting." And he adds, " According to the view of the court it was in effect a written request to the committee to make repairs, in consideration of which the defendant undertook to pay." He further says that the case of *Amherst Academy* v. *Cowles* "was a manifest instance of services performed at the request and by the direction of the defendant, for which an action might have been sustained upon the subscription itself, independent of the note." "It resembles, in this particular," he says, "the case of *The First Religious Society of Whitestown* v. *Stone,* (7 *John.* 113,)" It thus appears from the opinion of Judge Gardiner and the cases examined by him, that if the agreement and the facts in this case furnish evidence of a request by the defendant to the trustees of the church, or their agents, to erect the new church edifice and to enter into the necessary contracts for that purpose, in consideration of which the promise of the defendant to pay $150 towards that object was made, such promise is binding on the defendant and this action thereon can not be sustained against him. If there was no other evidence of a request, in this case, than the subscription paper itself, the action, under the decision in *Hamilton College* v. *Stewart,* could not be sustained, unless a distinction can be maintained between a promise to pay money to promote the interests of religion, and a like promise for the diffusion of knowledge and the advancement of science. For the instrument in question contains no undertaking on the part of the corporation or its trustees or agents, as a consideration for the promise of the defendant. The facts established by the parol evidence

Barnes *v.* Perine.

in this case, however, distinguish it from the case of *Hamilton College* v. *Stewart.* In this case the plaintiffs not only knew of the existence of the subscription paper, but set it in motion; and the defendant, after he had signed the paper, was present at several meetings of the congregation, (he being a member thereof,) and of the subscribers to the fund, at which it was resolved to erect a new house of public worship, and at which a building committee were elected, and that committee were directed, with the advice and consent of the trustees, to erect a new church edifice, and to make the necessary contracts for that purpose. The defendant also took a part in the proceedings of these meetings. In pursuance of the directions of these meetings, and of the resolutions of the board of trustees, the building committee proceeded to erect, and did erect, the new church edifice; and expended more than $6000 in the erection of such edifice, on the faith of the subscriptions of the defendant and the other subscribers. This expense was incurred without any knowledge or notice on the part of the board of trustees or of the building committee that the defendant refused, or intended to refuse to pay his subscription. These facts furnish decisive evidence of a request and direction by the defendant and the other subscribers, to the building committee, who were the agents of the corporation, to erect the new church edifice, and to make the necessary contracts to accomplish that object. The defendant, by being present at the meetings of the congregation and of the subscribers, at which resolutions were adopted directing the building committee to erect the church, and make contracts therefor, and taking part in the proceedings of such meetings, must be presumed to have concurred in the acts of such meetings, and to have united in such direction to the building committee. This is therefore manifestly a case of services rendered and expenses incurred at the request and by the direction of the defendant; which is the precise case in which Judge Gardiner, in *Hamilton College* v. *Stewart,* (1 *Comst.* 585,) held that an action would lie on a subscription similar to the one signed by the defendant.

The present case is in short this. The defendant requested the corporation or its agents, to build the new church edifice, and

in consideration of the building of such church edifice he undertook to pay to the corporation $150. The corporation has built the church, as requested, and the defendant therefore is now legally bound to perform his undertaking, to pay the $150. The subscription paper is evidently not a complete agreement between the parties. It does not contain the whole contract. The part of the contract which rests in parol may therefore be supplied by suppletory evidence. (*Potter* v. *Hopkins*, 25 *Wend.* 419. *Cowen & Hill's Notes*, 1471 *to* 1473. 5 *Barb. Sup. Court Rep.* 456.)

The instrument signed by the defendant may be regarded as merely a promise to pay $150, provided the trustees of the church would build a new house of public worship. Such a promise Judge Gardiner says would, according to the cases, amount to a request to perform that service, and the defendant would be liable. (1 *Comst.* 585, 6.) The subscription paper may at least be allowed to perform the office of fixing the amount of the defendant's liability; he having made himself liable to the corporation by his request and direction to its agents to erect the church. It is not necessary that a consideration should exist at the time a promise is made. Thus if A. promise B. to pay him a sum of money if he will do a particular act, and B. does the act before the revocation of the promise, the promise thereupon becomes binding, although B. does not at the time of the promise, engage to do the act. Intermediate the promise and the performance of the act the obligation of the promise is suspended. (*Train* v. *Gold*, 5 *Pick.* 384. *Chit. on Cont.* 29, 30. 20 *Pick.* 467. 11 *Mass. Rep.* 117. *Story on Cont.* § 380 *a*, 381. 17 *Maine Rep.* 305.) The doing the act is a good consideration for the previous promise; and the promise amounts to a request to do the act. (1 *Comst.* 585, 6.) Although in this case it should be held that the defendant has, in contemplation of law, derived no benefit from the erection of the church, he is nevertheless liable in this action, because a prior request to build the church has been proved. (1 *Chit. on Cont.* 62.)

If the decision of the court of appeals in *Hamilton College* v. *Stewart* had not been made, I should have been inclined to hold

that the subscription paper itself, in this case, unaided by the facts proved, contained, not a complete agreement consisting of mutual promises binding on both parties, but a conditional promise to pay $150 provided the trustees of the church would build a new church edifice; and that the church having been built by the trustees before a retraction of the promise, the promise was binding on the defendant. But I entertain no doubt that within the principle of the decision of the court of appeals, the instrument in question and the subsequent request and direction of the defendant to the corporation, considered together, do establish such a conditional promise; and that as the condition has been performed by the corporation, the defendant is liable to pay the sum subscribed by him.

The agreement of the defendant may, I think, also be regarded as an offer or proposition, and the building of the church as an acceptance of such offer or proposition. There are many cases which hold that gratuitous promises may be enforced, where they have operated to induce engagements and liabilities, within the knowledge of the promiser. (*Story on Cont.* § 453, *and cases cited.*) Incurring expense and assuming liabilities in consequence of the promise, is regarded as a sufficient consideration for the promise. (12 *Mass. R.* 190. 14 *Id.* 172, 176. *Underhill* v. *Gibson,* 2 *N. Hamp. R.* 352. *Amherst Acad.* v. *Cowles,* 6 *Pick.* 433, *per Parker, Ch. J.*) In *Amherst Acad.* v. *Cowles,* Parker, Ch. J. ruled that if by means of a solemn promise to pay, the body to whom the promiser has pledged his word should encounter expense or assume legal liabilities, this was a sufficient legal consideration to support such a promise; and the promiser had no right to withdraw his contribution after the execution or during the progress of the work which he himself set in motion. Upon the principle of these cases the present action could be sustained against the defendant. The plaintiffs, or their agents, in consequence of the promise of the defendant and the other subscribers of the subscription paper, and relying on the payment of their subscriptions, proceeded, with the knowledge of the defendant and of the other subscribers, to incur expense and assume liabilities in the erection of the new house of

worship. This presents the case of prejudice, expense, and charge to the promisee, which is sufficient to constitute a valuable consideration for a promise. (1 *Chit. on Cont.* 30. 2 *Kent's Com.* 465, 6.) But I confess I can not well see how the proposition can be sustained that the defendant, under the circumstances of this case, derived, in contemplation of law, no benefit from the erection of the new church edifice. The defendant was a member of the congregation. He was an attendant on the stated preaching of the gospel to such congregation. The old house of public worship was dilapidated and unfit for use, and was too limited in its size for the accommodation of the members of the society. A larger and more commodious church edifice, to say nothing of the infinite importance of sustaining the institutions of religion, would certainly increase the comfort and convenience of the defendant and his family, in their attendance on the public ministrations of the gospel to the congregation.

None of thecases in our courts, or of those in the supreme court of Massachusetts, cited on the argument of the case of *Hamilton Col-lege* v. *Stewart,* conflict with the view which I have taken of the present case.

In the cases of *Limerick Academy* v. *Davis,* (11 *Mass. R.* 113,) and of *Bridgewater Academy* v. *Gilbert,* (2 *Pick.* 578,) which were cases of naked subscriptions to a fund, in the one suit for erecting, and in the other for rebuilding an academy, the defendants had not taken any part in the subsequent proceedings of the corporation; nor done any act which sanctioned the acts of the trustees, or induced them to incur expenses on the faith of their subscriptions, or which recognized and confirmed their original promise. And there was in those cases no evidence that the defendants had any knowledge that the trustees were incurring expenses in consequence, and on the faith of their subscriptions. It was for these reasons that in those cases, the defendants were held not to be liable on their promises. In the case of *Limerick Academy* v. *Davis,* Ch. J. Sewall says that if the defendant had concurred in the subsequent proceedings of the corporation, and had enjoyed the advantages of a member of the corporation, the corporation would have been entitled to the benefit of his subscrip-

Barnes *v.* Perine.

tion. The case of *Boutell* v. *Cowdin,* (9 *Mass. R.* 254,) did not decide that a written promise made to pay a sum of money to a body legally existing, &c. for the benefit of a church, was valid. (6 *Pick.* 436, *per Parker, Ch. J.* 5 *Id.* 508.) In *Farmington Academy* v. *Allen,* (14 *Mass. R.* 172,) the defendant had, on the application of the trustees of the academy, for payment of his subscription, delivered to them in part payment a quantity of shingles to be used in the building of the academy. And it was held that although he was not liable on his original subscription, yet that he was liable for the remainder of his subscription on the ground of money laid out by the trustees for his use, on his implied request. In *Trustees of Hanson Church* v. *Stetson,* (5 *Pick.* 506,) a voluntary subscription to increase a fund for the support of a minister, was held to be valid, and the subscribers were adjudged liable on their notes given for the amount of their subscriptions.

The facts, in this action, make out a much stronger case in favor of a recovery than those in the case of *McAuley* v. *Billenger,* (20 *John.* 89.) In that case it did not appear that the defendant attended the meeting of the society at which the plaintiffs were appointed a committee to receive subscriptions, and to contract for the repair of the church, or did any other act than that of signing the subscription paper, which sanctioned the acts of the meeting, or which induced the committee to incur expenses on the faith of the subscription, and to proceed in repairing the church. And the court in that case held that the mere act of signing the subscription, after the meeting, sanctioned the acts of that meeting in resolving to make the repairs; and recognized the authority of the committee to contract for such repairs.

In *Amherst Academy* v. *Cowles,* (6 *Pick.* 427,) the defendant had, after his subscription to a charitable fund for the classical education of indigent pious young men, given his promissory note for the amount of his subscription; and it was held that the giving of the note was a sufficient recognition and confirmation of the defendant's promise, and that the note was founded on a sufficient consideration. In the *First Religious*

*Society of Whitestown* v. *Stone*, (7 *John*. 113,) the defendant had, with others, signed a written agreement, in which he and ,the other subscribers individually agreed to pay to the trustees of the church the sums set opposite to their names, to be paid annually, to be applied to the purpose of paying a salary for the support of the minister of the society, so long as he should administer the gospel in said society. The agreement was not signed by either the trustees or the minister. The agreement was held to be a valid contract in law, and binding on the subscribers so long as the minister continued to administer the gospel in the society. The consideration was the preaching of the gospel. The agreement contained no undertaking on the part of the trustees. Judge Gardiner regarded the case as one of services performed at the request of the signers of the agreement. (1 *Comst.* 585.)

The decision of the court of errors in *Hamilton College* v. *Stewart*, (2 *Denio*, 403,) settled no principle. A majority of the members of the court voted to reverse the judgment of the supreme court, on diverse and different grounds. And it does not appear that a majority agreed as to any one ground of reversal.

For the reasons hereinbefore stated, I am of opinion that the verdict of the jury in this case ought to stand; and that the plaintiffs are entitled to judgment thereon.

--------

DUTCHESS GENERAL TERM, July, 1850.    *Morse, Barculo, and Brown,* Justices.