## The Wayne and Ontario Collegiate Institute vs. Daniel Smith.

The defendant, with others, made his subscription to raise an amount sufficient to induce a religious association to establish and found a collegiate institute, to be located at N., where he resided; which subscription was also used to induce the regents of the university to grant a charter for such institution. The institution being incorporated, the defendant acted as one of the trustees, and paid two installments upon his subscription, to enable the officers to proceed with the erection of the collegiate buildings. He did not refuse to act as trustee, or to pay upon his subscription, until after contracts had been made, and measures had been taken to erect the buildings, and large expenses for that purpose incurred. *Held* that the defendant must be deemed to have requested the corporation to proceed with the erection of the buildings described in the subscription paper, and to have ratified and affirmed his subscription, and the acts of the trustees in incurring expense towards the erection of the college edifice.

Where the subscribers to a paper severally agreed well and truly to pay the

several sums set opposite to their respective names, to the treasurer of a board of trustees to be thereafter elected, said money to be expended in the erection of an institution of learning, to be built of brick, at least three stories high, and capable of accommodating 500 pupils, &c. and to be located at N.; *Held* that each subscription should be regarded as a conditional promise or proposition to pay the sum subscribed, towards the expense of erecting an institution of learning in the manner, and upon the terms, and of the description specified in the paper, which promise became binding upon each subscriber when accepted, adopted and acted upon by the corporation.

After the corporation has proceeded, upon the faith of the engagement contained in such a paper, to make contracts and incur liabilities for the erection of buildings, the proposition of the subscription paper should be deemed accepted, and the liability of the subscribers fixed.

Such subscriptions can be sustained, upon the principle that gratuitous promises or propositions to pay money upon condition, or upon the happening of some event, or the doing of some act, or incurring some expense, loss or legal obligation, become binding as legal and valid contracts, upon acceptance and performance of the stipulated condition.

APPEAL from a judgment of the Wayne county court, reversing a judgment of a justice of the peace. In May, 1855, the defendant and several other persons signed the following paper:

"We, the subscribers, do agree to well and truly pay the several sums set against our respective names, to the treasurer of a board of trustees, (which may be elected by the Wayne County Baptist Association, at a convention now called to meet at Marion, on Wednesday, the 30th day of the present month,) in such installments, (provided always that no more than one fourth is called for at any one time,) and at such times as shall be demanded, under the following provisions, viz: said moneys shall be expended in the erection of an institution of learning, and no other purpose; said institution shall be built of brick, at least three stories high, and capable of accommodating five hundred pupils; said building shall be of a modern style of architecture, well and thoroughly furnished, the grounds inclosed in a neat fence, laid out with gravel walks and planted with shrubbery; the course of instruction shall be equal to the first three years

of a college course, open to both males and females, of all denominations; said institution shall be furnished with an extensive library, philosophical and chemical apparatus sufficient for illustrating all the branches therein taught; said institution shall be located in Newark, east of the west line of the old corporation of Arcadia. It shall be the duty of said Baptist denomination to keep said institution in operation continually, and provided they should fail for a longer period than one year in so doing, for want of interest therein, then such buildings, or at least such portion of their value as shall have been paid by the citizens of Newark, shall revert to them, and they shall ever after control them by their trustees, provided always a school is sustained by them; but in case provided said Baptist denomination do well and truly carry on said school, as above set forth, then our subscription shall be to them donations, to be forever after held by them, without any reservation or interest therein, whatever.

Arcadia, May 23, 1855."

To this paper the defendant subscribed $100.

On the 6th of July, 1855, an application of sundry inhabitants of Newark was presented to the regents of the university of the state for a charter of incorporation, in which application it was stated that subscriptions for the endowment of an academy in that place to the amount of $10,500 had been received, of which ten per cent had been paid in, &c. A copy of the subscriptions was annexed to the application, being the subscriptions which had then been made to the paper aforesaid, including the subscription of the defendant. A charter was granted by the regents, by the name of "Wayne Co. Collegiate Institute." The name was subsequently changed by the regents, to the "Wayne and Ontario Collegiate Institute." This action was brought in a justice's court to recover the amount of two installments of $15 and $10, of the defendant's subscription, with interest. At the trial, evidence was given by the plaintiff, tending to prove that there was a meeting of the Wayne County Baptist

Association, at Marion, on the 30th of May, 1855; that the meeting adjourned to meet at Palmyra; and that the meeting at Palmyra adjourned to and was held at Macedon, in June, 1855. No trustees were elected by the said association at Marion. The meeting at Palmyra fixed the location of an institution of learning; and there was testimony that the meeting at Macedon elected fifteen trustees, of which the defendant was one. It was proved by the plaintiffs that they made calls for installments of the subscriptions; that two installments of $15 and $10 were collected of the defendant by collectors of the plaintiffs, and that he was applied to by a collector for an installment of $15, and written to by the collector for another installment of $10, neither of which had been paid. The plaintiffs further proved that they entered upon erecting a building, in September or October, 1855, to be three stories high and basement, and sufficient to accommodate 500 or 600 pupils; that they stopped the work in December of that year on account of frost, and have not done any thing since, "on account of funds."

There was no evidence given that the plaintiff had incurred any indebtedness or liability on the faith of the subscriptions, beyond the installments paid and collected thereon. The only evidence on that subject was, that a building committee was appointed to contract for the materials and the work; that it was stated it was the object of a meeting of the trustees, October 18, 1856, to make some arrangements to pay Mr. Parkhurst, for which purpose it was proposed to assign the balance due on the twenty-five per cent subscriptions; that at a meeting of the trustees, June 13, 1857, the president and secretary were authorized to assign to William Parkhurst two justices' judgments in favor of the plaintiff; that the trustees, at the meeting last aforesaid, adopted a report to the regents, of the condition and prospects of the plaintiff.

At the close of the plaintiff's proofs, the counsel for the defendant moved for a nonsuit, on the following grounds:

The Wayne and Ontario Collegiate Institute *v.* Smith.

"1. The plaintiff has not established facts sufficient to entitle it to recover. 2. That the subscription proved is conditional and void, on grounds of public policy. 3. That the evidence shows that the plaintiff, previous to this suit being commenced, abandoned the enterprise of building the institution subscribed for. 4. That the plaintiff has not shown itself to be the owner of the subscription. 5. That the subscription is void as being without consideration or mutuality. 6. That the evidence shows a forfeiture of the charter of the institution. 7. That the subscription contains obligations and rights which are unequal in regard to the several subscriptions."

The justice granted the motion. On appeal by the plaintiff to the county court the judgment of the justice was reversed, and the defendant appealed to this court.

*T. R. Strong*, for the appellant.

*G. H. Arnold*, for the respondent.

*By the Court*, E. DARWIN SMITH, J. The decision of the county court in this case, reversing that of the justice, I think, was right, and is sustainable, within the cases of *Barnes* v. *Perrine*, (9 *Barb.* 210; *S. C.*, 15 *id.* 249, and 2 *Kern.* 18;) *McAuley* v. *Billenger*, (20 *John.* 89;) *Farmington Academy* v. *Allen*, (14 *Mass. Rep.* 172;) *Amherst Academy* v. *Cowles*, (6 *Pick.* 427;) and *Religious Society of Whitestown* v. *Stone*, (7 *John.* 113.) The defendant, with others, made his subscription to raise an amount sufficient to induce the Wayne county Baptist association to establish and found a collegiate institute, to be located in his own village, at Newark, in said county ; which subscription was also used to induce the board of regents to grant a charter for such institution, in which charter the defendant was named as one of the trustees of said corporation. The in-

The Wayne and Ontario Collegiate Institute *v.* Smith.

stitution being incorporated, in pursuance of such application, the defendant acted as one of the trustees, and paid two installments upon his subscription, to the collector appointed by the trustees, to enable the plaintiff to go on with the erection of the collegiate buildings, and did not refuse to act as trustee, or to pay upon his subscription, until after contracts had been made, and proceedings had been taken, to erect the buildings, and large expenses for that purpose incurred. Upon these facts, I think he must be deemed to have requested the corporation to proceed with the erection of the buildings described in the subscription paper, and to have sanctioned and affirmed his subscription and the acts of the trustees in incurring expense towards the erection of the college edifice. So far as liabilities were assumed, or expenses incurred, by the plaintiff before the defendant repudiated his subscription, no doubt can, I think, be entertained that he must be liable to pay his proportionate share of such liabilities and expenses, on the ground that they were incurred at his request. But if his obligation is fulfilled when such liabilities are discharged and expenses paid, the college edifice which the plaintiff was engaged in erecting must remain unfinished, unless contracts were previously made to complete the whole work, and the whole enterprise of founding and establishing a noble institution of learning, according to the plan of the original subscription, must probably be entirely abandoned; for if the obligation assumed in the subscription papers is binding upon the defendant only to the extent of liability and expense incurred before its repudiation, most of the residue of the subscription will probably not be paid. This action, I presume, is a pioneer suit, to ascertain by the decision of this court whether the original subscription is valid. For it appears that about cotemporaneously with the refusal of the defendant to make further payments upon his subscription, the work of erecting the college edifice was suspended. In the case of *Barnes* v. *Perrine* the church had been erected, when the suit was brought;

and the trustees had taken down the old church, and erected a new one in its place, on the faith of the subscription, at a cost of more than $6000. And in the case of the *Trustees of Farmington Academy* v. *Allen,* the trustees of the academy, on the faith of the funds raised by the subscription, had proceeded to erect a building for the use of the institution. In both these cases the whole work could properly be claimed to have been performed for the defendants, respectively, and they were liable therefor, as for money paid or expended at their request. But upon this ground, the liability to pay upon the subscription must cease with the request; and such request could not be implied, after an express refusal to make further payments, and a distinct repudiation of the subscription. Regarding the liability upon such subscription paper as based upon an extrinsic request outside of the subscription paper itself—though a correct assumption, as far as it goes—it seems to me this is placing the principle upon which the liability rests, on too narrow ground.

I think it is to be regretted that the more liberal ground suggested by Chancellor Walworth in *Hamilton College* v. *Stewart* (2 *Denio,* 416) of mutual promises; or the ground suggested by Chief Justice Nelson, in the same case, (*Id.* 408,) was not sustained by the court of appeals, in that case. (1 *N. Y. Rep.* 582.) I am by no means satisfied that in this country, where all our religious, educational and charitable institutions are founded by voluntary associations, and dependent upon private liberality, the personal benefit to be derived from the erection of a church edifice for worship by himself and family, or the erection of an academy or other institution of learning in his immediate neighborhood, for the education of his children, are not works involving a sufficiency of private interest to every citizen, and of pecuniary benefit, to maintain a promise expressly and distinctly made, received and acted upon in the erection of buildings for such purposes. But the view is clearly repudiated, in most of the

The Wayne and Ontario Collegiate Institute v. Smith.

cases, and it is perhaps too late to say that it is a view of the question altogether too narrow for this great continent, over which civilization, law and religious and educational institutions are to be spread and maintained purely upon the voluntary principle.

But I think the subscription in this case, and this class of subscriptions generally, can be based upon another ground, which to me seems impregnable. I think the subscription here should be regarded as a conditional promise or proposition to pay to the plaintiff the sum of $100 towards the expense of erecting an institution of learning in the manner, and upon the terms, and of the description specified in the subscription paper signed by the defendant and others, in question in this action. The subscribers to that paper do therein severally agree well and truly to pay the several sums set opposite their respective names, to the treasurer of a board of trustees; "said money to be expended in the erection of an institution of learning, to be built of brick, at least three stories high, and capable of accommodating 500 pupils," &c., and "located at Newark." This subscription paper, I think, means and is, in substance and legal effect, the same as though it read as follows : "We the subscribers severally agree with the Wayne and Ontario Collegiate Institute, that in consideration that the said corporation will proceed to erect a building for an institution of learning, at Newark in the county of Wayne, capable of accommodating 500 pupils, in manner and style as herein particularly specified, we will pay to such institution the sum set opposite our respective names; provided that not more than one fourth is called for in one year's time." This is, in substance, the proposition of the defendant as one of the subscribers to these papers. It is a conditional bargain or agreement on his part, binding when accepted, adopted and acted upon by the plaintiff.

Gratuitous promises or propositions to pay money upon condition, or upon the happening of some event, or the doing

of some act, or incurring some expense, loss or legal obligation, become binding as legal and valid contracts upon acceptance and performance of the stipulated condition. (*Story on Cont.* 453. 12 *Mass. Rep.* 140. 14 *id.* 172, 176. 5 *Pick.* 384. 6 *id.* 433. 12 *id.* 129. *L'Amoreux* v. *Gould*, 7 *N. Y. Rep.* 349. *Hilton* v. *Southwick*, 17 *Maine Rep.* 303.) Upon this principle all difficulty in regard to this class of subscriptions seems to me obviated, and a recovery upon them can be had without resorting to the questionable expedient of patching up a contract by extrinsic parol evidence, from which to help out the subscription paper by the implication of a promise. The object of the subscription is expressed in the paper itself. The terms upon which the defendant agrees to pay are therein specified. When these terms are complied with, or engagements and liabilities incurred on the faith thereof, a complete contract is made, and the liability of the defendant has become absolute. Upon the faith of the engagement contained in the subscription paper signed by the defendant, the plaintiffs were, in my opinion, entitled to go on and make contracts, and incur liabilities, for the erection of the college edifice. And when they had proceeded to do so in good faith, the proposition of the subscription paper should be deemed accepted, and the liability of all the subscribers to such paper fixed, and they, and each and every of them, should be held thereafter legally bound to pay their and his subscription, in manner and form as specified in the said proposition or subscription by them signed respectively.

The judgment should be affirmed.

[MONROE GENERAL TERM, December 2, 1861. *Welles, Smith* and *Johnson,* Justices.]