46b 235
41ap204

## Hutchins and others, trustees, &c. *vs.* Smith.

The defendant, with others, subscribed a paper, agreeing to pay to certain persons named therein as trustees, the sums subscribed, for the purpose of raising a fund sufficiently large to entitle them to an act of incorporation as an academy; $2500 being specified as the sum necessary to be subscribed, in order to render the subscriptions binding; and the paper contained a request to the trustees to purchase land and to erect thereon suitable buildings and fixtures for an academy. In accordance with the terms of this paper and upon the faith thereof, a lot was purchased, expenditures were made, and liabilities incurred, by the trustees, in making such purchase, and in erecting a building. The defendant was one of the trustees, and an active participator in all these proceedings, until nearly $2500 had been subscribed. He drew the subscription paper, solicited subscriptions, as a member of the building committee; made a written contract for the purchase of the lot, and took the deed to himself and his associates as said building committee. *Held* that the defendant was clearly liable to pay the amount of his subscription.

*Held, also,* that the defendant having incurred liabilities, and united with his associates in contracting for, and in purchasing the lot and materials, with a full knowledge that the $2500 required to be subscribed in order to make the subscriptions binding, had not been all subscribed, these acts were a waiver of the condition, and estopped him from asserting a non-compliance with its terms as an objection to a recovery in an action upon his subscription.

*Held, further,* that no time being specified, in the subscription paper, within which the $2500 was to be raised, a notice from the defendant to the trustees, and the building committee, stating that he had erased his name from the subscription paper, and was unwilling to remain a party to the enterprise, was not sufficient to exonerate him from liability, on the ground of non-compliance with the condition at the time the notice was given; and that the amount of subscriptions having been increased, within a reasonable time after the notice, to $4000, that entirely obviated the objection.

Also *held* that the action was properly brought in the names of the persons named as trustees, in the subscription paper; they being the real parties in interest.

APPEAL from a judgment entered upon a referee's report. The action was brought to recover the sum of $150 upon a subscription paper, signed by the defendant and several others, which was as follows:

"We, the undersigned, agree to pay to the trustees named below, the sum set opposite our names, for the purpose of raising a fund sufficiently large to entitle us to an act of incorporation from the regents. The persons named as trustees

6

are to purchase grounds in Mechanicville, and erect thereon a suitable building and fixtures for an academy, and such as the regents require to grant an act of incorporation, the persons named as trustees shall, after the site is purchased, appoint Isaac Clements, Robert More and L. E. Smith a building committee to erect a building or buildings, and shape the grounds, &c. and when the act of incorporation is granted, the trustees shall divide the capital stock into shares of $25 each, and issue scrip to the contributors in proportion to the amount they subscribe, that is to say, any one that subscribes $25, shall be entitled to one scrip, and an additional scrip for every $25 thereafter. The persons named below shall act as trustees until the association arrive at a stage when they can be legally appointed, and then they shall be appointed for one year from that date. The persons named are as follows: B. B. Hutchins, Thomas C. Green, James C. Rice, E. Noble, Lewis Smith, Truman Mabbett, William Tibbitts, Daniel Golden, K. Howland, F. D. Hatfield, A. Lindsay, Isaac Clements, Robert More, L. E. Smith, H. J. Quackenbush and Thomas Callemman.

Dated at Mechanicville, August 8th, 1859.

The subscription to this paper is not binding unless the sum of $2500 is subscribed."

To this paper various signatures were obtained, eventually amounting to about $4000 — the sixth subscription was that of the defendant, for $150. The cause was referred.

The following facts are found by the referee to have been done and performed by the defendant:

He drew the subscription paper and solicited subscriptions. While the subscription paper was in circulation he attended several meetings of the trustees and the subscribers, and took an active and leading part in their proceedings. This occurred after he subscribed the paper, down to about and after the 1st of October, 1859.

The trustees organized, and held frequent meetings from the 23d of August down to some time prior to the 14th of

October, 1859. The defendant attended several of these meetings, and took an active part in them. At one of the meetings, he, Knowlton, Howland and Robert More, were appointed a committee to select a site for an academy building. At a subsequent meeting the defendant and More signed and made a written report, recommending from the various sites offered, the lot which was subsequently purchased, as the cheapest place for that location, at the price of $800. On the 31st of August, the defendant More and Howland entered into a written contract with the owners of the lot so recommended, for its purchase. By this contract the deed was to be executed on the 1st of October next, and the committee, of which the defendant was one, gave their joint note to the owner for the purchase money. On the 17th of September the board voted that the building committee be notified to commence work. Between the 1st and 14th of October there was a controversy among the trustees about the dimensions and expense of the building, and in relation to the propriety of a larger subscription. During this time some small expenses toward its construction were incurred. The lot was cleared off, the digging of the well, and the quarrying of stone, to stone the same, was commenced. The work thus done amounted to a few dollars. The defendant, soon after the 1st of October, *intimated* that he should refuse to go on with the other subscribers unless the building should be limited in price so as not to exceed the amount of the then subscriptions, and refused to begin the construction upon any plan which would run them in debt. But on the 12th of October, 1859, a building, larger than the defendant desired, was adopted by the trustees, which building was completed at a cost of about $6000, about $4000 of which was paid by subscriptions and the rest by a mortgage. The academy was organized and is in successful operation, and the defendant has sent his children to it. On the 14th of October the defendant served on the building committee, and on the trustees, and on some others, a notice by which he informed the

trustees and others that he had erased his name from the subscription paper and was unwilling to remain a party to the enterprise. At the time of the service of this notice, the amount of the subscriptions was $2450. The defendant erased his name from the original subscription paper without the consent of the other subscribers, or of his co-trustees. His co-trustees did, however, consent to his going out as trustee, and another was appointed in his place. After the service of said notice, a committee of the trustees obtained a conveyance of the lot in question, from the defendant and wife, More and wife, and Clements and wife, to the trustees of the academy, by name, which conveyance was dated the 14th day of October, 1859. The committee who obtained this conveyance allowed the defendant to erase his name from the note of $800, which had been given to pay the consideration for the lot, and also from the contract which had been entered into for its purchase. Before the commencement of this suit, the plaintiffs demanded of the defendant payment of his subscription.

The referee reported in favor of the plaintiffs, for the amount of the subscription and interest.

The defendant made several requests to find certain facts, which were refused, and exceptions taken to the decisions of the referee. He also requested the referee to decide, as conclusions of law, certain propositions stated in the case, which were likewise refused, and exceptions duly taken. The defendant also duly excepted to the report of the referee. Judgment was entered upon the report, and the defendant appealed.

The questions raised appear in the opinion of the court. The cause was submitted upon printed briefs.

*E. F. Bullard,* for the appellant.

*D. L. Seymour,* for the respondent.

Hutchins *v.* Smith.

*By the Court,* MILLER, J.   The subscription paper signed by the defendant contained an express agreement to pay to the persons designated therein as trustees the sums subscribed, and a request to purchase land and to erect thereon a suitable building and fixtures for an academy.   In accordance with its terms and the request therein contained, proceedings were taken to purchase the lot, to ·make expenditures, to incur liabilities, and to erect the building.   The defendant himself was an active participator in all these proceedings, until nearly the whole amount fixed as the sum required had been subscribed.   He drew the original subscription paper, solicited some subscriptions, in connection with two other persons who were associated with him as members of the building committee, made a written contract for the purchase of the lot, and took the deed of the lot to himself and his associates, as said committee.   The subscription paper itself contained a request, and upon the faith of the promise by the subscribers to pay, expenditures were made and the academy built and organized.   The defendant was clearly liable, within the principle decided in several adjudicated cases. *(Barnes* v. *Perine,* 9 *Barb.* 202.   15 *id.* 249.   12 *N. Y. Rep.* 18.   *The Wayne and Ontario Collegiate Institute* v. *Smith,* 36 *Barb.* 576.   *Richmondville Seminary* v. *Brownell,* 37 *id.* 535.   *Van Rensselaer* v. *Aikin, MSS* opinion *general term,* 3*d district.*)

The plaintiff's right to recover is objected to upon the ground that the defendant had a right to revoke his promise at any time before the $2500 was subscribed; and until that condition had been complied with, the other parties had no right to expend money, incur liabilities, or to do any act to bind the defendant.

The defendant, soon after the first of October, gave strong intimations that he was unwilling to go on unless the cost of the structure was limited to the subscriptions, and between ·that time and the 14th of October some small expenses were incurred towards the construction of the building.   On the

14th of October he gave a written notice, to the building committee and trustees, to the effect that he was unwilling to continue a party to the enterprise, and afterwards refused to act as trustee, The subscriptions at this time amounted to $2450.

I think that the notice, and the unwillingness of the defendant to proceed, were not sufficient to exonerate him from liability. As no time was fixed within which the amount provided for was to be raised, and as the amount was increased, within a reasonable time after the notice, to $4000, it entirely obviated this objection. But if there may by possibility be any question as to the force of the suggestion last made, a conclusive answer to this position of the defendant is, that the defendant himself was actively engaged in soliciting and encouraging subscriptions and in promoting the enterprise. The evidence shows that he incurred liabilities, united with his associates in contracting for, and in purchasing, the lot upon which to erect the building, and the brick, with a full knowledge that the $2500 was not subscribed. These acts were a waiver, I think, of the condition in the subscription that $2500 must be subscribed to make it binding, and estop him from asserting it as an objection to a recovery in this action. As he fully sanctioned what was done prior to any expressions of dissatisfaction, he certainly has no right to complain. (*Smith* v. *Gugerty,* 4 *Barb.* 623. *Ref. Prot. Dutch Church* v. *Brown,* 17 *How.* 288. *Betts* v. *Perine,* 14 *Wend.* 219. *Plumb* v. *The Cat. Co. Ins. Co.,* 18 *N. Y. Rep.* 394.)

The alleged revocation was made after liabilities had been incurred and some money expended, and as the remarks already made cover that aspect of the case, I do not deem it necessary to discuss the effect of a revocation after the full amount intended had been subscribed.

Nor do I regard it as important to consider the effect of Howland's (one of the trustees) acts prior to the service of the notice and after the defendant had expressed his dissatis-

Hutchins *v.* Smith.

faction with the proceedings. As it is apparent that the defendant was a prominent actor in the enterprise, lending to it his aid and encouragement, so that prior to his attempt to withdraw, much had been done towards its successful prosecution, and he waived the condition as to the amount of the subscriptions, no good reason exists why he should not be made liable.

I have examined the several requests made by the defendant to the referee to find additional facts besides those incorporated in his report, and I have arrived at the conclusion that he correctly refused to find as requested.

I think that the first was not material, even if warranted by the evidence. The second is not so entirely clear as to the facts, as to authorize the finding requested. The third, fourth, and fifth are immaterial, and unimportant. The sixth, to the effect that when Smith served the written notice, on the 14th of October, 1859, only $2450 had been subscribed towards the erection of the academy, had already been found.

The seventh also was immaterial, as it did not rest in the power of the defendant, who had only acquired an interest for the benefit of the subscribers and as a trustee, to insist that the conveyance of such interest should discharge him from the payment of the subscription. He had no right to exact any such condition, and if acquiesced in, it was not obligatory. The eighth request was not authorized by the facts, as the grantees had no agent who was vested with power to discharge the subscription. The ninth and last was also immaterial. The trustees never accepted the defendant's proposition, and were not obligated to object to it.

I have also examined the several requests to the referee to decide as conclusions of law, and I think that some of them were well founded. Several of these propositions — the first, second, third, fifth and sixth — are in conflict with the grounds upon which the referee's decision and the plaintiff's right to recover is based, and the views already expressed.

Vol. XLVI. 16

They were, I think, clearly erroneous. The fourth was properly refused, because there was no proof that Harris was the agent of the grantees to procure the signature of the defendant to it. He was only employed to draw the deed.

The seventh was not warranted upon any principle of law or equity. The defendant had voluntarily resigned his position as a trustee, and had no cause for complaint because his resignation was accepted. As to the eighth and last, I think that the action was properly brought in the name of the trustees, who were the real parties in interest.

It follows from these observations that the judgment entered upon the referee's report must be affirmed, with costs.

[ALBANY GENERAL TERM, December 4, 1865. *Hogeboom, Peckham* and *Miller,* Justices.]