CORNELIUS G. VAN RENSSELAER, Respondent, *v.* BENJAMIN AIKIN, Appellant.

An agreement whereby the defendant and others promise to pay to T. the sums by them respectively subscribed, to be expended in repairing a certain road, creates no liability to a third person (the plaintiff) who makes the repairs at an expense more than equal to the full amount subscribed, although T., after completion of the work, has assumed to assign the subscriptions to the plaintiff. The fact that the plaintiff is himself also one of the subscribers does not change the rule.

Whether the true construction of the instrument is that the work should be done by or under the direction of all the subscribers, their joint fund to be placed in the hands of T., or that T. should do the work and the money be paid to him therefor; in neither case can any request to the plaintiff to make the repairs or promise to pay him therefor be implied.

T. having neither promised to make the repairs, nor incurred expenses in reliance upon the subscription, was never in a situation to enforce it; and his assignment conveyed no rights to the plaintiff.

(Argued September 26th, 1870; decided December 28th, 1870.)

APPEAL from an order of the General Term of the Supreme Court in the third judicial district, affirming a judgment in favor of the plaintiff, entered upon the report of Roswell A. Parmenter, Esq., sole referee.

The facts are sufficiently stated in the opinion of LOTT, Chief Commissioner.

The case below is reported in 44 Barbour, 547.

*Samuel Hand*, for the appellant, cited *Hamilton College* v *Stewart* (1 Comst., 581); *Brigdewater Academy* v. *Gilbert* (2 Pick., 579); *Barnes* v. *Perine* (12 N. Y., 18); *Wilson* v. *Baptist Ed. Soc.* (10 Barb., 314); *Utica & Syracuse R. R.* v. *Brinkerhoof* (12 Wend., 139); *Lester* v. *Jewett* (12 Barb., 502); *Tucker* v. *Wood* (12 John., 190); *Keefe* v. *Goodrich* (id., 307); *Burrat* v. *Bisco* (4 John., 235); Story on Agency, § 13, 108; *Ingraham* v. *Gilbert* (20 Barb., 151).

*William A. Beach*, for the respondent, cited *L'Amoreaux* v. *Gould* (7 N. Y., 349); *Hamilton College* v. *Stewart, supra;* *Barnes* v. *Perrine, supra.*

LOTT, Ch. Com.   The plaintiff seeks, by his complaint, to recover from the defendant the sum of $100, which he claims to have expended on the faith of a written agreement, and the different subscriptions thereto made by nine subscribers including the defendant. · The agreement is annexed to and forms part of the complaint, and is as follows : "Whereas, an appeal has been made from the order of the commissioners of highways of the town of Clinton, opening a certain highway upon the petition of Volkert P. Dow and others. And, whereas, the undersigned are in favor of retaining the present road, provided the same can be permanently repaired ; now, therefore, this article witnesseth that in case the referees, appointed to hear and decide the appeal, shall reverse the said order of the commissioners, we do hereby promise and agree to pay G. V. B. Teller the sum by us respectively subscribed, to be expended in repairing the road in front of C. G. Van Rensselaer's lot, according to the stipulations presented to us."

The defendant's subscription was for the sum of $100.

The complaint after stating that the defendant was in favor of retaining the said road in front of the plaintiff's lot, referred to in the said agreement, alleged that it, after being subscribed

by the several subscribers thereto, "was delivered to the said J. V. B. Teller; that said Teller, before the commencement of this action, indorsed the same as follows: 'Pay to C. G. Van Rensselaer or order,' signed 'J. V. B. Teller,' and afterward for value received, duly assigned, transferred and delivered said agreement in writing to this plaintiff, who is now the lawful owner and holder thereof." It then, after stating that the order referred to in the said agreement was reversed on the 9th day of November, 1858, avers "that on the faith of said agreement and the different sums subscribed thereto, this plaintiff has permanently repaired said road according to said plans and stipulations presented and expended money in repairing said road to the full amount of the different sums subscribed thereto," and that the said defendant, though often requested, has not paid said sum of $100; and thereupon he demanded judgment for the payment thereof "according to the terms of said agreement," with interest from the 1st day of August, 1860, or for such other or further relief as the court might deem fit. It is evident from the allegations of the complaint that G. V. B. Teller, named in the said agreement, is the same individual subsequently named in the complaint as J. V. B. Teller, and I shall assume that to be the fact.

The defendant, by his answer, put all the material allegations, except the signing of the agreement, in issue.

The issues were tried by a referee, who found among other things:

1st. That on the 12th day of September, 1855, there was pending a certain appeal from the order of the commissioners of highways of the town of Clinton, opening a highway and discontinuing a section of an old road along the bank of the Hudson river, and passing by the residence of the defendant through the lands of the plaintiff to the city of Albany.

2d. That on that day the parties to this action, conjointly with others, executed and delivered to Jacob V. B. Teller the subscription paper or contract above set forth.

3d. That intermediate the execution of said subscription, and the bringing of this action, the decision of the commis-

sioners of highways, mentioned in the said subscription, was in all things reversed; that upon the reversal of said decision, the plaintiff repaired said old road at the place and according to the plans and stipulations referred to in the said subscription paper, and to the satisfaction of the defendant.

4th. That the defendant subscribed $100, and has not paid the same or any part thereof to any person.

5th. That the expense and value of the work performed by the plaintiff in making such repairs exceeds the sum of $2,000.

6th. That before the suit was brought Jacob V. B. Teller transferred all his right and interest under said subscription paper to the plaintiff, and at the same time paid his own subscription to the plaintiff.

7th. That Teller, under and by virtue of said subscription paper, never made, or caused to be made, any repairs to said road, and never received or expended any money for that purpose.

8th. That the repairs made by the said plaintiff and contemplated by the subscription paper were beneficial to the defendant.

From the foregoing facts he found the following conclusions of law, viz.:

1st. That the subscription paper, executed by the defendant, amounted to a request to perform the work contemplated in it, and the subsequent performance of such work rendered the defendant's agreement obligatory upon him.

2d. That the plaintiff was entitled to judgment against the defendant in the sum of $100, together with interest thereon from the 6th day of September, 1860, besides costs to be adjusted, and he directed judgment accordingly.

I have stated the allegations of the complaint and the findings of fact with such particularity, for the purpose of showing that the plaintiff based his claim against the defendant, and the referee placed his decision on no other agreement or promise than that contained in the instrument or subscription paper signed by him and delivered to Jacob V. B. Teller, as above mentioned.

The only question, therefore, to be considered, is, whether the facts so found are sufficient to give a right of action to the plaintiff, and entitle him to judgment against the defendant.

Assuming for the present, as the referee finds in his conclusions of law, that the subscription paper executed by the defendant, " amounted to a request to perform the work contemplated in it," a very material and controlling inquiry is suggested, and that is, to whom was that request made ? The referee does not say. There is clearly nothing in the instrument to indicate, warrant or justify the conclusion that it was made to the plaintiff, or that it was contemplated by any of the subscribers thereto, that he was to repair the road. He, it is true, conjointly with the defendant, and seven other persons, signed the paper; but there is no ground or color for the inference, from such signature thereto, or anything contained therein, that he, more than any other of the subscribers, was expected or authorized to make the repairs.

On the contrary, if a request to any party to perform the contemplated work can arise, it can only apply to Jacob V. B. Teller, the person designated in the agreement as the payee to whom the several subscribers promised and agreed to pay the sums by them respectively subscribed, " to be expended in repairing the road," etc.

The fact that Teller was so designated as such payee of those moneys, and that they were " *to be* expended " in such repairs, appears to me clearly not only to indicate that he, and he alone, was to incur the expense for the work, and pay for it out of those moneys, but also to exclude the idea that any authority was conferred or intended to be conferred on him to do the work or have it done on the credit of the subscribers or any of them.

If this construction of the agreement be correct, it follows that no request of the plaintiff can arise or be inferred from the agreement itself. The nature of the transaction and the surrounding circumstances strongly confirm the construction, that the plaintiff was not expected to do the work, or be intrusted with its execution. The agreement itself shows that

the road which was to be repaired ran in front of his lot; and it also appears by the finding of the referee that it was "an old road, located along the bank of the Hudson river, and passing by the residence of the defendant, through the lands of the plaintiff, to the city of Albany." It thus appears that the road ran in front of the plaintiff's lot, and also of the residence of the defendant; and as it was the object of both of them, as well as of the other subscribers, as declared in the agreement, that it should be "permanently repaired," there was a manifest propriety, and a sufficient reason, that some person other than the plaintiff should make the required reparation. Each of these parties had a direct personal interest, not only in the permanent repair of the road, but also as to the proper performance thereof in front of his own premises; and such interest may have operated in the exclusion of themselves, and in the selection of Mr. Teller to do the work. It is unnecessary to add anything further on this branch of the case than to say, that MILLER, J., in the opinion delivered by him in the Supreme Court, after alluding to the fact that there was no particular person designated who was to perform the work, and that it may perhaps be questionable whether it was not intentionally left as it was, without naming any one, so that any one of the subscribers could do it who was willing to perform the duty, adds: "As, however, the money was payable to Teller, and was to be expended in repairing the road, I am inclined to think that it was either to be done by him, or under his direction, or with his authority or approbation. It necessarily passed through his hands; and hence, I think, it may be assumed, as a fair and sensible construction of the contract, that he was the person through whose instrumentality the agreement was to be carried out."

My conclusion in any view of the case is, that the subscription paper did not amount to a request to the plaintiff to perform the work contemplated, and that the referee erred if he intended it to be understood or inferred from his finding that it did; and it follows that the subsequent finding, based thereon, "that the subsequent performance of such work

rendered the defendant's agreement obligatory upon him," is also erroneous.

It is, however, said by Justice MILLER in the opinion already referred to, that, although by a fair and sensible construction of the contract, Teller was the person through whose instrumentality the agreement was to be carried out, yet " it was not intended that he personally should be obliged to do the work;" that " he had an undoubted right to employ others if he chose, and it was no change of the terms of the contract if he did so," and upon the assumption that he had done so, and that the contemplated repairs and work were done under and in pursuance of such employment; the judge comes to the conclusion, in which his brethren appear to have concurred, that the plaintiff, under and by virtue of the assignment executed by Teller to him directly *after* he had repaired the road, of all Teller's right and interest under the said subscription paper, could maintain this action. The answer to that position is, that the complaint itself, and the facts found by the referee, not only do not warrant and authorize that assumption, but are entirely repugnant to it, and inconsistent therewith. The complaint avers, " that on the faith of the said agreement, and the different sums subscribed thereto, the plaintiff has permanently repaired said road according to said plans and stipulations presented, and expended money in repairing said road to the full amount of the different sums subscribed thereto;" and there is no allegation or suggestion of the performance of the work by Teller, or by any one under his employment.

The referee also finds that " the plaintiff repaired said old road," etc. * * * " that the expense and value of the work performed by the plaintiff in making such repairs, exceeds the sum of $2,000," and " that Teller, under and by virtue of said subscription paper, *never made* or *caused* to be made any repairs to said road, and never received or expended any money for that purpose."

There is, therefore, no ground for sustaining the judgment of the court below.

The views above expressed render it unnecessary to decide or consider whether there was sufficient in the agreement and the facts found by the referee, to raise or infer a request to Teller, to perform the work contemplated or not.

The action is not founded on such request, or on a liability resulting therefrom.

The judgment of the General Term, and that entered on the report of the refereee must, for the reasons stated, be reversed, and a new trial is ordered, costs to abide the event.

EARL, C. It is somewhat doubtful, from the terms of the instrument in question, who was to expend the money and do the work contemplated. The money was to be paid to Teller; but it is not stated in terms that he was to expend it. Assuming, as claimed on the part of the plaintiff, that the instrument implied a request to do the work, his counsel claims that a true construction of the agreement requires us to hold that the request is addressed to each one of the subscribers, and that either of them could go on and do the work. I do not think this is a reasonable construction. The terms used, and the nature of the case is such, that it is quite clear to my mind, that the parties did not contemplate this when they subscribed. It would be quite an unusual way to accomplish what the parties had in view. Under such a construction, what would give one party a preference over another and if one party commenced the work, what would prevent the interference of one or more of the others? And if several less than the whole number, attempted to do the work, who would control, and how would the work be managed? It seems to me that such a construction is not only unwarranted by the terms of the instrument, but is impracticable and absurd.

A more reasonable construction would be to hold, that the work was to be done by all, and under the direction of all the subscribers. They severally promised to contribute to a joint fund to be placed in the hands of Teller, to be expended in repairing the road. They mentioned no one who was to

expend the money and make the repairs, and under such circumstances, as they were jointly interested in the fund and in the work, it is fair to infer, that they intended that the money should be expended and work done by them, or under their direction as a body. If this construction be the true one, it would be easy to show that the plaintiff could not maintain this action. Under such a construction, it cannot be said that there was an implied request in the instrument addressed to the plaintiff to do the work, or an express or implied promise on the part of the defendant to pay him, or that there is any proof in the case that the plaintiff did the work in reliance upon the subscriptions.

But, it seems to me, we must reach the same result, if we adopt the construction given to the instrument by the General Term, that the check was to be drawn and money expended by or under the direction of Teller. I do not mean to express a certain opinion that this is not the proper construction. It is the one most favorable to the plaintiff; and if he cannot succeed under this construction, he cannot at all.

According to this construction, the money was to be paid to Teller, and he was to expend it in making the repairs; and there was an implied request, addressed to him by each one of the subscribers, to make the repairs. But this request alone did not make the promise to pay obligatory, for the reason that Teller did not promise to make the repairs, and the promise could become obligatory only when Teller acted upon the request and made the repairs in reliance upon the subscriptions. (*Trustees, etc.,* v. *Stewart,* 1 N. Y., 581; *Barnes* v. *Perrine,* 12 id., 19; *S. C.,* 9 Barb., 202.)

There is no allegation in the complaint that Teller made the repairs, or caused them to be made. It is not even alleged that the repairs were made under his sanction, or by his authority, or with his consent. It is alleged that the plaintiff made them. The complaint seems to have been drawn up on the theory that the request of the subscribers was addressed to the plaintiff. All it is alleged Teller did was to assign the subscription paper to the plaintiff. But that paper is of no

avail, and gives the plaintiff no cause of action, unless it is shown that the request contained by implication in it was acted upon and the repairs were made in pursuance of it, and in reliance upon the subscriptions.

But there is not only this defect in the complaint, but there was no proof that Teller ever acted upon the request. There is no proof that he ever had anything whatever to do with the repairs, or that he even knew, at the time, that the plaintiff was engaged in making them. The proof shows that the plaintiff alone made the repairs, and completed them, before the assignment by Teller to him of the subscription paper. Under such circumstances, how can it be said that Teller acted upon the request, and incurred any expense, in reliance upon the subscriptions? There is no allegation or proof that Teller adopted the work after it was done, except it may be inferred from the assignment of the subscription paper. There is no proof that Teller ever promised or agreed to make the repairs, and, hence, when plaintiff made them, he did not make them, in any sense, as Teller's agent; and, hence, Teller was in no way liable to plaintiff for the repairs made by him. Teller was, therefore, at no time in a situation to enforce the subscriptions, and he could not, by any assignment, confer upon the plaintiff the right to enforce them. He could not, by the assignment, create a cause of action which he did not have.

I am, therefore, of the opinion that neither the facts alleged, nor the facts proved, nor the facts found by the referee, are sufficient to enable the plaintiff to maintain this action; and the judgment below should be reversed and a new trial granted, costs to abide event.

All concur for reversal.

Judgment reversed and new trial ordered, costs to abide the event.